DELANCY, et al. *v.* DAVIS, et ux.

No. 40330        December 17, 1956        91 So. 2d 286

*Jason Floyd, English Lindsey,* Gulfport, for appellants.

476

*Louis Hengen,* Biloxi, for appellees.

LEE, J.

This is an appeal by John Delancey and others, defendants and cross-complainants, from a decree of the chancery court which confirmed the title of Clifford Davis and wife to eighty acres of land, as described therein, and dismissed the cross bill of the defendants.

The complainants pled, and the proof showed that Richard C. Delancey, the ancestor of the defendants, patented the land in question on April 12, 1893; that thereafter, on November 23, 1922, he executed a deed of trust thereon to Dr. D. H. Ward; that on January 12, 1928, he executed and delivered to Edward Fairley, for a

consideration of $185 cash, a warranty deed to this land; that, through mesne conveyances from Edward Fairley, Melvin Fairley, Verda Fairley and L. E. Fairley, on October 23, 1941, Mrs. J. P. Turan and J. R. Turan, for a consideration of $750, became the owners thereof; that the Turans conveyed the land to complainants on August 22, 1952; and that the complainants and their predecessors in title have paid the taxes on the land since 1928.

John Turan, who handled the purchase of the land for Mrs. J. P. Turan and J. R. Turan, his wife and brother, testified that, at that time, John Delancey and his sister, Mrs. Alice Williams, were living on the land, and he made an agreement with John for him to continue to live on the place, and as rent, he would take care of it insofar as fire and other hazards were concerned, and would help Turan's parents when work was necessary on their farm. Sometime later, a report came to him that John was going to file some sort of claim on squatter's rights; that he went to John and asked him about it; and that John told him that the report was false, "that I had been good to him and we'd continue our relations as before, and I never heard any further from him as long as I owned the property." This was corroborated by Frank McClellan, a brother-in-law of John Turan.

Clifford Davis testified that, on the day after he bought the land, he told John that he had purchased it, and wanted him to stay on, take care of and protect it against fire; and that John agreed to do so. Later when rumors came that he was claiming the place, he went to John about it and was then advised by him to see his lawyer.

The defendants and cross-complainants set up, and John and Henry Delancey and Mrs. Alice Williams and Mrs. May Noble, sons and daughters of Richard C. Delancey, testified that the mortgage to Dr. Ward was given to pay for the cost of an operation to remove one of their father's eyes; that the doctor was pressing for payment,

and finally their father got Edward Fairley to take up the mortgage; that Fairley represented at the time that he was going to do so, and that he would never close it out; that Fairley cut the timber in 1938 but not until after he had promised to apply the purchase price of $350 on the mortgage and in payment of taxes; and that they did not discover until about 1940 or 1941 that Fairley had sold the land. They further said that, in 1928, their father was hard of hearing, his mind was bad at times, he could not see or get around very well, and he died in 1934 at the age of eighty-five years. There was some corroboration by the witness John Rushing as to partial deafness, and he also expressed the opinion that the land was worth about $30 an acre in 1928.

On the contrary, Clyde Roberson testified in rebuttal that he saw Richard C. Delancey at times walking the road and hunting his cattle, that he never saw anything wrong or peculiar about him, and he talked all right; that he walked a distance of one and one-half to two miles to get to the home of the witness; that he did not have to "holler" in order for the old gentleman to hear; and that he saw him reading newspapers at times over the period from 1930 to 1932. Mrs. Bessie McClellan testified that Richard C. Delancey came to her home on numerous occasions; their houses were about one-half mile apart, and he would come by way of a path; that he walked in the woods hunting his cattle, and she had seen him walking on the highway. She thought he was in good conditon.

At the outset of the testimony of the sons and daughters, as mentioned above, the complainants objected to its introduction on the ground that the evidence tended to establish their claim against the estate of their deceased father and Fairley estate. The court neither sustained nor overruled the objection, but stated that the testimony would go in for the benefit of the record and this would be determined later. However, the record fails to disclose that this was ever done.

██ █ The effect of that evidence was to show that the deed to Fairley was in fact a mortgage. In that event, title to the land, inasmuch as such mortgage would now be barred by the statute of limitations, would vest in the estate of Richard C. Delancey, and they, as heirs, would inherit the land, thus establishing their claim to the land, and against the estate of their deceased father and Fairley estate. The same thing would be true, under their evidence, as to the alleged permissive cutting of the timber by Fairley in 1938. The admission of such evidence is condemned by Section 1690, Code of 1942. See also Coleman v. Kierbow, 212 Miss. 541, 54 So. 2d 915, and authorities there cited.

However, where the chancellor, on objection, reserves his ruling when evidence is offered, and he is not later requested to, and he does not again, rule upon the evidence, the objection is waived. Geoghegan v. Krauss, 228 Miss. 231, 87 So. 2d 461; Holcomb, Inc. v. City of Clarksdale, 217 Miss. 892, 65 So. 2d 281; Mallory v. Walton, 119 Miss. 396, 81 So. 113.

None of these witnesses were present at the time of the execution and delivery of the deed, and no one testified as to the circumstances attendant on that transaction. Both the grantor and the grantee were dead at the time of this trial. ██ █ In order to establish an absolute deed as a mortgage, the proof must be clear and convincing, such as to leave no considerable doubt. Griffith's Mississippi Chancery Practice, 1950 Ed., Section 589, pp. 622-4. ██ █ The "utterances of the parties to a conveyance subsequent to its execution are very generally deemed of little weight in determining its character as a mortgage." 36 Am. Jur., Mortgages, Section 156, p. 766.

██ █ Appellants never paid any taxes whatever on this land although living thereon prior to and since their father's death, and now claiming it by adverse possession. On the contrary, the appellees and their predecessors in title paid all taxes accruing subsequent to the deed in

1928. The chancellor evidently believed the evidence of John Turan and Frank McClellan. If this evidence was true, it showed recognition by John Delancey of the validity of the title of Mrs. J. P. Turan and J. R. Turan, and that he and his sister, who moved in with him after her husband's death, thereafter occupied the land as tenants of the Turans. Such recognition of course destroyed any claim by them of title by adverse possession prior to that time. The record does not show any rupture of such relationship, or notice thereof, for as much as ten years prior to the institution of this suit.

There was substantial evidence to sustain the decree of the learned chancellor. It certainly cannot be said, on this record, that he was manifestly wrong.

Consequently it follows that the cause must be, and it is, affirmed.

Affirmed.

*McGehee, C. J.,* and *Holmes, Ethridge* and *Gillespie,* JJ., concur.