451 So.2d 1362 (1984)
Fed HARRIS, et al.
v.
S. Charles KEMP.
No. 54256.
Supreme Court of Mississippi.
June 6, 1984.
Rehearing Denied July 11, 1984.
*1363 Luther Dove, Chill, Chill & Dove, Jackson, for appellants.
Leonard C. Martin, Sam E. Scott, John B. MacNeill, Heidelberg, Woodliff & Franks, Jackson, for appellee.
Before WALKER, P.J., and DAN M. LEE and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
This is an appeal from the Chancery Court of Copiah County which dismissed a suit of appellants to cancel a special warranty deed, for an accounting, and for other relief. Also in the action, the chancellor reformed the deed in question from Fed Harris and wife to appellee, cancelled the claims of appellants upon appellee's land as clouds upon his title, and granted appellee a money decree of $750.00 on a promissory note, plus $150 attorney's fees and $175 interest on the note; also, appellee was granted a judgment of $5,000 for rent. For the reasons noted below, we reverse.
Fed Harris and wife had lived on a 264 acre farm in Copiah County for many years and had known and had financial dealings with Kemp and his father for forty or fifty years. Kemp is an automobile dealer in Jackson, Mississippi.
Harris had fallen upon hard economic times. He had judgment creditors to the tune of some $20,000. He owed a first mortgage to the Federal Land Bank for $35,000 and a second mortgage to Wesson Milling Company for $44,000. Also by 1978, he had a mortgage to Kemp for $18,600.
In late 1978, Wesson began foreclosure, and, unable to raise money to pay Wesson, Harris sought out Kemp for help. Kemp, through Sam Scott, his lawyer, hired James Nobles to represent Harris in the foreclosure proceedings, paying Nobles' $500 retainer fee for Harris. Kemp then had Harris and wife sign an exclusive option in favor of Kemp to purchase the farm for $92,000 less what was owed to Kemp. This option was never recorded. Kemp then had, on January 26, 1979, the Harrises execute a special warranty deed to him for $100. This was also not recorded. Harris was told that Kemp needed this deed to borrow the money to pay off Wesson. No money ever changed hands on this deed.
Meanwhile, Nobles had filed to enjoin Wesson's foreclosure to which Wesson had consented. Wesson then filed for a judicial foreclosure. In this action, Wesson alleged that Harris owed it a total of $160,000  $44,000 on the deed of trust and the remainder from business ventures between it and Harris. On April 4, 1979, a decree was entered by consent in that case, providing that Harris pay over to Wesson $50,000. He was given thirty days within which to comply.
During the pendency of the Wesson Milling Company suit, a meeting was had between the Harrises, Kemp, and their attorneys. At that time, Kemp agreed to put up the $50,000 to pay off Wesson. However he was not willing to make any more loans on the property. Instead the parties spoke of some type conveyance. Eventually on April 4, 1979, an agreement was reached and the above mentioned decree was entered. *1364 After agreement was reached, however, Kemp left for Europe for several weeks.
Then, on May 4, 1979, the last day before expiration of the thirty-day period provided for in the decree, the parties and their attorneys met at the Copiah County court house to consummate their prior dealings. There, after checking to see the amount owed Kemp by Harris for previous loans, the amount of the Federal Land Bank Loan, and the amount owed to the judgment creditors, a special warranty deed to the property was executed by Harris in favor of Kemp and was recorded. Additionally on May 4, an assignment of the $50,000 Harris owed Wesson was executed in favor of Kemp in exchange for Kemp paying Wesson the $50,000. Thus by May 4, 1979, Kemp held a special warranty deed to the 264 acres as well as an assignment of the $50,000 deed of trust on the property.
During the negotiations and at the May 4th signing, a repurchase agreement was discussed. On request of Harris, Nobles drew up a repurchase agreement calling for a two-year redemption period. The purported agreement would have had Harris repaying Kemp the amounts owed plus 10% interest and an inflation factor to be computed later. This written agreement was presented to Kemp at the May 4th meeting. However, Kemp declined to sign it, saying that Harris would just have to trust him. The testimony as to what was actually agreed upon is conflicting  Harris claiming a two-year redemption period and Kemp claiming a one-year redemption period.
After the May 4th transaction, Fed and Kathryn Harris continued to live on the property, at least until Kathryn's death on September 12, 1979, and Fed's remarriage several months later. However, Fed continues to go to the property daily to maintain it. All witnesses, including Kemp, testified that Kemp allowed Harris to remain on the property rent free, provided he (Harris) maintained the property. During this time, Kemp paid the taxes on the property and assumed the Federal Land Bank deed of trust.
On several occasions after the May 4th, 1979, transaction, Harris approached Kemp concerning repurchase of the property. However, in November or December, 1980, a representative from Getty Oil Company approached Kemp, stating that the Company was seriously considering drilling for oil on the property. Consequently, when, in December, 1980, Harris approached Kemp, Kemp did not quote a repurchase price, saying, according to Harris's testimony, that he (Kemp) wanted to wait and see the outcome of the Getty exploration. Finally, in February, 1981, Kemp stated that he would allow Harris to repurchase for $177,000, but that he (Kemp) would reserve the mineral rights.
Harris testified that though he was able to repay the amount he owed Kemp, $177,000 without mineral rights exceeded that amount. However, apparently because he thought $177,000 was more than he owed, Harris never tendered any money. Incensed over Kemp's price, Harris filed suit on May 26, 1981. Thereafter, Kemp posted the property and wrote a letter to Harris informing him that he was no longer allowed to use the land. In June, 1981, Kemp filed criminal trespass charges against Harris.
The case proceeded to trial on April 29, 1982, wherein a final judgment was entered in favor of Kemp. Subsequently Harris perfected this appeal, arguing, among other things, that the chancellor erred in failing to treat the May 4, 1979, special warranty deed as a mortgage.
Mississippi has long adhered to the rule that a deed absolute on its face may be found valid and effectual as a mortgage, if it were intended by the parties "to operate as a security for the repayment of money." Vasser v. Vasser, 23 Miss. (1 Cush.) 378, 380 (1852). See also, Prewett v. Dobbs, 21 Miss. (13 Sm. & M.) 431 (1850). In order to show that a deed, absolute on its face, was intended as a mortgage, however the evidence must be clear and convincing. Delancy v. Davis, 229 Miss. 475, *1365 480, 91 So.2d 286, 288 (1956). See also, Jordan v. Jordan, 145 Miss. 779, 111 So. 102 (1927).
In determining whether this burden was met and whether a transaction was intended as a mortgage rather than a deed, there is no conclusive test. Instead, each case must be decided upon its own facts and all the surrounding circumstances. Lampley v. Pertuit, 199 So.2d 452, 455 (Miss. 1967); Emmons v. Emmons, 217 Miss. 594, 599, 64 So.2d 753, 755 (1953). Among the factors this Court has previously noted as being pertinent in such a determination are: the relation of the parties, the financial condition of the grantor, possession by the grantor, the value of the property, and the conduct of the parties. Emmons v. Emmons, supra, at 599, 64 So.2d at 755. Also noted, by other authorities, as pertinent are the payment of taxes and subsequent dealings of the parties. 59 C.J.S. Mortgages § 35, p. 70. And finally, it is said that a mortgage stands as security for a debt which a mortgagor remains under a legal obligation to pay. Thus when a debt has been extinguished by agreement of the parties, by the execution of a conveyance, and the grantor has the privilege of refunding and to a reconveyance, it is a conditional sale. However, under a mortgage, a debtor-creditor relation continues. Conner v. Conner, 238 Miss. 471, 119 So.2d 240 (1960); Hoopes v. Bailey, 28 Miss. (6 Cush.) 328 (1854).
Moreover, where, as here, the grantor retains possession of the property, parol evidence may be introduced to prove that the deed, absolute on its face, was intended as a mortgage. Mississippi Code Annotated § 89-1-47 (1972); Bethea v. Mullins, 226 Miss. 795, 85 So.2d 452 (1956).
Examining all the surrounding circumstances and applying the elements enumerated in Emmons, the following result is reached. The relation of the parties here showed a discrepancy as in Emmons: Harris had only a high school education and Kemp had a Master's Degree in Economics. The financial condition of the grantor (Harris) was extremely poor and he was attempting, with Kemp's help, to stave off foreclosure. Also Harris, the grantor, remained in possession and control of the property after the execution of the deed. The value of the property, however, was only slightly higher than the total amount Kemp had invested, though as noted below Harris remained obligated to repay these amounts. And finally, the conduct of the parties showed that Kemp acted to help Harris save his property and took a special warranty deed and assignment of the Wesson Milling Company deed of trust only to protect his interest by placing himself above the judgment creditors. Moreover, and perhaps more importantly, the evidence here showed that Kemp merely took an assignment of the $50,000 Wesson Milling Company deed of trust. The testimony indicated that this assignment did not cut off the indebtedness and that it has not been cancelled. Indeed, on August 21, 1979, Kemp renewed the Wesson Milling Company note. Also the evidence showed $18,600 in promissory notes executed by Harris in favor of Kemp and still outstanding. Thus all the evidence, including the testimony of Kemp himself, indicates that a debtor-creditor relationship continues to exist and that the existing debt by Harris was not extinguished by the giving of the special warranty deed.
As noted in Emmons, what Kemp is attempting to do by this suit is the very thing he admits he attempted to prevent, viz. the taking away of Harris's property. This result was enhanced by the chancellor's ruling which effectively vested title to Harris's property in Kemp while at the same time obligating Harris to repay Kemp for his (Harris's) prior debt. Thus the chancellor's ruling would have required a finding that Harris simply gave away his property for nothing. We, therefore, hold that the chancellor erred in failing to find that the May 4, 1979, special warranty deed was intended by the parties to be a mortgage.
Having found that the instrument involved here was a mortgage, the *1366 method of bringing about an equitable result is collateral and incidental. Where, as here, a deed absolute on its face is held to be a debt-securing mortgage, there is an express or implied promise to do whatever is necessary to reinvest title in the grantor upon payment of the debt. Emmons v. Emmons, supra. As we noted in Emmons, a court of equity in such cases has the authority to set aside the deed upon payment to the grantee of the amount of the debt with interest. Equity regards as done that which ought to be done. Therefore, we reverse and remand to the chancery court for an accounting and to cancel the May 4th, 1979, special warranty deed upon payment, within a reasonable time, by Harris to Kemp of the debt owed.
Having thus found the instrument in question to be a mortgage rather than a deed, we also reverse and render the chancellor's finding that Harris is obligated to pay $5,000 in rent. However, we affirm as to money decree of $750.00 on promissory note  which note was executed after the special warranty deed and which does not appear connected to the land in question  along with $150.00 attorney's fees and $175.00 interest on said note.
REVERSED AND REMANDED FOR AN ACCOUNTING AND FOR CANCELLATION OF THE SPECIAL WARRANTY DEED UPON REPAYMENT, WITHIN A REASONABLE TIME, OF THE DEBT OWED;
REVERSED AND RENDERED AS TO PAYMENT OF RENTS.
AFFIRMED AS TO MONEY DECREE OF $750.00 ON PROMISSORY NOTE, $150.00 ATTORNEY'S FEES, AND $175.00 INTEREST.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
ROBERTSON, J., not participating.