818 So.2d 1213 (2002)
APAC-MISSISSIPPI, INC., Appellant,
v.
JHN, INC., Sam Hollenhead and Jeanette Hollenhead, Appellees.
No. 2001-CA-00566-COA.
Court of Appeals of Mississippi.
May 28, 2002.
*1215 Dewitt T. Hicks, Jr., P. Nelson Smith, Columbus, attorneys for appellant.
H. Russell Rogers, Starkville, attorney for appellees.
Before SOUTHWICK, P.J., THOMAS, and IRVING, JJ.
SOUTHWICK, P.J., for the court.
¶ 1. APAC filed suit against JHN, Inc., and BancorpSouth to confirm title in itself to a particular piece of property. Instead, title was confirmed in JHN and its lender, but with APAC having the right to sell such lots from a platted subdivision within the parcel as were necessary to satisfy a default judgment. On appeal, APAC argues that the chancellor erred in finding that the relevant deed through which it claimed the property was only an equitable mortgage, and also erred in reforming the property description. JHN, Inc., and a third-party plaintiff cross-appeal and allege that APAC had committed fraud. We affirm in all respects.

STATEMENT OF FACTS
¶ 2. On June 7, 1999, APAC was granted a default judgment against Hollenhead Construction Services, Inc. in the amount of $191,760.18. The judgment represented amounts owed by Hollenhead for road construction completed by APAC at various sites, including the Spring Valley Estates subdivision.
¶ 3. In July 1999, Scott and Steve Hollenhead approached APAC, on behalf of Hollenhead Construction, to discuss payment of the judgment. A meeting was held between the Hollenheads and officials *1216 for APAC, including in-house counsel Timothy Bixler, controller Mike Bersen, and outside counsel Dewitt T. Hicks. The Hollenheads informed APAC that they were attempting to obtain refinancing for their operations and wished for delay. APAC was not interested and would proceed with executing on Hollenhead Construction's corporate assets. Scott and Steve Hollenhead then proposed that their parents, Sam and Jeanette Hollenhead, would be willing to provide as collateral for new financing some property that they owned. APAC countered by requesting "a deed to the real estate, and we'll hold onto it as payment; and, if you guys are able to get the cash, we'll deed the property back to you." In return for the deed, APAC promised not to execute on corporate assets until September 30, 1999.
¶ 4. A settlement agreement and warranty deed, prepared by APAC counsel Dewitt T. Hicks, were sent to Scott Hollenhead. Scott traveled to Branson, Missouri to deliver the settlement agreement and warranty deed to his parents. Sam and Jeanette Hollenhead had the settlement agreement and warranty deed for approximately two days, then signed both. The warranty deed was recorded by APAC on July 22, 1999. The interpretation and accuracy of the description in the deed is the principal issue on this appeal. The dispute is whether the description actually encompasses any property in addition to the unsold lots in a subdivision, and if the description does, whether that is only because of mutual mistake or even fraud.
¶ 5. JHN and the Hollenheads argue that the deed only applies to the unsold lots. APAC's counsel Bixler later stated that it was his company's intention to take possession of all the property that Sam and Jeanette Hollenhead owned in Webster County. That was about forty acres. Bixler stated that he understood the forty acres to be partially subdivided into individual lots, to encompass a lake, and also to include a piece of property fronting on the road leading to the subdivision. Included in the forty acres was a 1.41 acre parcel upon which stood the personal residence of Sam and Jeanette Hollenhead.
¶ 6. Though APAC later extended the deadline for payment until December 1999, no payment was made. In a letter dated February 1, 2000, APAC's outside counsel, Dewitt T. Hicks, responded to a proposal from Buchanan Meek, counsel for the Hollenhead family. Hicks wrote that APAC would reconvey to Sam and Jeanette Hollenhead all unsold lots in the Spring Valley Estates Subdivision, including their personal residence, for $100,000. This offer was never accepted.
¶ 7. In a deed recorded on March 6, 2000, Sam and Jeanette Hollenhead conveyed by warranty deed the 1.41 acre parcel of property on which was located their personal residence to JHN, Inc. The price was $63,000. The property had appraised at one time as being worth $109,000. This amount retired the balance of $58,000 secured by a deed of trust and provided the Hollenheads with a $5,000 payment. A new loan was provided by BancorpSouth, which received a deed of trust.
¶ 8. On March 31, 2000, APAC filed a complaint against JHN, Inc. and Bancorp-South. APAC sought to have the deed and deed of trust canceled as a cloud upon APAC's title. It also sought damages for slander of title. Bancorp South answered by denying APAC's claims, noting that it had paid off a prior secured loan that had been held by Deposit Guaranty National Bank, and sought confirmation of its deed of trust. JHN answered that the deed from the Hollenheads to APAC was to contain only the thirty unsold lots in the Spring Valley Estates subdivision.
¶ 9. On June 7, 2000, JHN, Inc. filed a third-party complaint against Sam and *1217 Jeanette Hollenhead. JHN stated that the consideration paid was $63,400 plus the discharge of prior accounts due from the Hollenheads for appraisal and real estate services worth $21,734. JHN sought reimbursement for its expenses in defending the title action and, in the event APAC was awarded the property, it sought a judgment in the amount of $85,134. JHN then filed a counter-claim against APAC. JHN alleged that the warranty deed was obtained by APAC "upon representations that it [was] nothing more than a mortgage on the undeveloped lots within Spring Valley Estates Subdivision" and that the lots would be reconveyed to Sam and Jeanette Hollenhead upon repayment of $42,973.57. JHN requested that the deed to APAC be either canceled or reformed into a mortgage covering only the unsold lots in the subdivision.
¶ 10. Sam and Jeanette Hollenhead, acting pro se, filed an answer to both the third-party complaint and counter-claim against APAC. The Hollenheads alleged that the warranty deed was to be a deed of trust to secure the payment of invoices due APAC and that "in error, and without any consideration being given by APAC, our residence and at least one other residence whose property is not located within the Spring Valley Estate subdivision was conveyed to APAC." The Hollenheads claim the warranty deed was obtained by APAC due to fraud.
¶ 11. In January 2001, BancorpSouth was granted summary judgment which gave it a first lien of $57,705.56 on the disputed property. On March 21, 2001, the chancellor entered judgment on the remainder of the claims. Based on mutual mistake of the parties, the deed was reformed to exclude all property other than the thirty unsold subdivision lots. The court found no credible evidence that APAC committed fraud. The chancellor also stated that "the settlement agreement was obviously prepared by an attorney and it is inconceivable to this Court that any intent to go beyond the 30 unsold lots in the Spring Valley Estates subdivision would not have been set forth in this agreement and reference made to the Deposit Guaranty National bank deed of trust." The chancellor also found that the warranty deed was an equitable mortgage. The chancellor denied all other relief.
¶ 12. The appeals of the parties were deflected here. Miss.Code Ann. § 9-4-3 (Supp.2001).

DISCUSSION

1. Mutual Mistake

a. The Proper Evidentiary Standard
¶ 13. The chancellor found that the warranty deed from the Hollenheads to APAC should be reformed as a result of a mutual mistake. While JHN and the Hollenheads agree that the deed should have been reformed, both argue that the chancellor should have found the basis for reformation to be a unilateral mistake on the part of the Hollenheads coupled with fraud on the part of APAC. APAC argues that there was no mistake and that the deed did not require reformation. Although neither side is arguing that there was mutual mistake or even alleged mutual mistake for various reasons, this does not prevent the chancellor from applying the law to the facts as he finds them.
¶ 14. Among the questions that we face is the proper standard of proof sufficient for the chancellor to find mutual mistake. The chancellor found that in order to reform the warranty deed in question, that mutual mistake must be proved by clear and convincing evidence. He cited Abney v. Lewis, 213 Miss. 105, 115, 56 So.2d 48, 51 (1952). Abney has been overruled. Instead, a "petitioner must prove the mutual mistake occurred between the *1218 parties beyond a reasonable doubt." McCoy v. McCoy, 611 So.2d 957, 961 (Miss. 1992). Though highly unusual as a standard in a civil case, the Supreme Court pronouncement was made after due consideration of conflicting precedents. Id. This standard has also been applied in a more recent decision regarding reformation of a deed. Dunn v. Dunn, 786 So.2d 1045, 1049 (Miss.2001).
¶ 15. Neither party addresses this issue. APAC says that the evidence does not prove mutual mistake and relies on the clear and convincing standard. JHN argues that the chancellor should have found fraud, which only requires clear and convincing evidence. Cook v. Children's Med. Group, P.A., 756 So.2d 734, 744 (Miss. 1999).
¶ 16. Nonetheless, we find that the chancellor's analysis of the evidence sufficiently states that he found proof beyond a reasonable doubt. The chancellor held that it was "inconceivable" that the parties intended to convey anything more than the unsold lots. We find no useful distinction between belief "beyond a reasonable doubt" and belief that a contrary conclusion is "inconceivable." We now look to whether the evidence supports the finding of mutual mistake.

b. The Warranty Deed
¶ 17. What property was conveyed by the warranty deed was the issue at trial. The warranty deed contained two separate "intent" clauses. The warranty deed first described the forty-acre parcel that APAC claims. After that description, the deed stated that "Spring Valley Estates Subdivision lies in the forty acres as above described and should be included in said description." This was followed by the recording information for several previously sold lots that were not to be included in the conveyance. Following this list was the statement: "It is the intention of the Grantors herein to describe and there is hereby conveyed all real estate owned by them in Spring Valley Estates Subdivision, whether correctly described herein or not."
¶ 18. If the language employed within a deed is "clear, explicit, harmonious and free from ambiguity, the Court will look solely to the language used in the instrument itself." Knight v. Minter, 749 So.2d 128, 133 (Miss.1999). Examining the two quoted intent clauses above, we do not find clarity. The Hollenheads may have been conveying everything that they owned within the forty-acre parcel except for the previously sold lots, or could only have been conveying the property that they owned in the Spring Valley Estate Subdivision. The Hollenhead residence is not located within the subdivision but is located within the larger forty-acre parcel.
¶ 19. APAC argues that the deed "clearly and unambiguously" is not limited to the unsold lots in the subdivision. We agree that the initial intent clause would not likely override the specific description of the forty acre tract, but the later intent clause creates doubt. In looking at the entire deed, and trying to gather its purpose "from the language employed," we find no certain purpose. Gilich v. Mississippi State Highway Comm'n, 574 So.2d 8, 11 (Miss.1990).
¶ 20. In order to determine meaning, we should first "look solely to the language contained within the `four corners' of the instrument...." Knight, 749 So.2d at 133. Since that was unsuccessful, we then should utilize relevant canons of construction. Id. We find no applicable canon that retrieves meaning here. Finally, we are to examine extrinsic evidence if the intent is still unknown. Id. That is where we now turn.
*1219 ¶ 21. Executed along with the warranty deed was a document entitled "Settlement Agreement." Paragraph two of the agreement stated that APAC would "grant a moratorium on levying execution or otherwise attempting to satisfy the Default Judgment" in exchange for a warranty deed conveying to it "the real estate specified herein below." Paragraph three specifically states that the Hollenheads own thirty lots in the subdivision. It goes on to say that a warranty deed shall be delivered to APAC conveying the thirty lots, subject to a deed of trust held by First American National Bank. There is no mention made of the larger forty-acre parcel nor the deed of trust on the Hollenhead home held at that time by Deposit Guaranty National Bank.
¶ 22. After reading the deed in light of the settlement agreement, we find a definite intention of the parties. This evidence forms the basis for the chancellor's belief that it was "inconceivable" that anything but the unsold lots were to be conveyed.
¶ 23. Thus simply as a matter of interpreting the instrument we conclude that the deed conveyed only the unsold lots. No consideration of mutual mistake was necessary for that conclusion. Nonetheless, were the deed to be interpreted as conveying more than the unsold lots, and in light of the evidence just described, we agree that it supports a finding that beyond a reasonable doubt, the description was the result of a mutual mistake. Neither party at the time of execution, when reading the deed in light of the settlement agreement, was considering conveying more than the unsold lots.
¶ 24. The chancellor did not err in reforming the deed to make clear that it conveyed only the thirty unsold lots located within the Spring Valley Estates Subdivision.

c. Fraud
¶ 25. Having found the deed to have conveyed only the unsold lots, we must now address the cross-appeal argument that the somewhat confusing manner in which the deed was written and APAC's conduct after execution constituted fraud. That argument would support reformation, and also potentially damages. The chancellor found insufficient proof of fraud.
¶ 26. We have already detailed the relevant evidence. There was ambiguity in the deed. We do not find that rejection of the argument that the deed was intended to cover the entire forty acre tract is an acceptance of the argument that APAC's interpreting the deed in that way was fraud. We do not find error in the chancellor's conclusion that it was not clearly and convincingly shown that APAC was through fraud attempting to gain more than was the parties' original contemplation.

2. Equitable Mortgage
¶ 27. The chancellor found the warranty deed was "given to secure payment of the default judgment within the times agreed upon by the parties," and therefore, an equitable mortgage. A debtor-creditor relationship existed between APAC and Hollenhead Construction Services, and the warranty deed was an equitable mortgage meant to secure payment of the default judgment. The chancellor further found that because Hollenhead Construction had not satisfied the default judgment, that APAC was authorized to sell at fair market value as many of the thirty lots as needed to satisfy the judgment. After satisfaction of the default judgment, APAC was to convey any remaining lots to the Hollenheads.
¶ 28. The chancellor cited the following to support his conclusion that this was a mortgage:

*1220 (1) APAC agreed to grant a moratorium on levying execution or otherwise attempting to satisfy the default judgment
(2) APAC agreed not to sell or otherwise exercise any acts of ownership and possession of the real estate conveyed by the warranty deed
(3) Hollenhead [was to] make all reasonable efforts to procure a sale of all or any portion of the real estate conveyed at the current market value and apply all proceeds after the cost of sale toward the default judgment
(4) Acceptance of the deed by APAC was not in satisfaction of the default judgment
(5) If the default judgment was satisfied in full or at some agreed lesser amount, the conveyed real estate was to be reconveyed by APAC to Hollenhead Construction Services and Sam and Jeanette Hollenhead
¶ 29. APAC states in its brief that had it been paid in full that it "would have returned the original deed unrecorded." That overlooks the fact that the deed was recorded only one week after the agreement was signed.
¶ 30. A deed that is absolute in its actual terms "may be found valid and effectual as a mortgage, if it were intended by the parties `to operate as a security for the repayment of money.'" Harris v. Kemp, 451 So.2d 1362, 1364 (Miss.1984). That a deed was intended as a mortgage must be demonstrated by clear and convincing evidence. Harris, 451 So.2d at 1364. "[W]here, as here, the grantor retains possession of the property, parol evidence may be introduced to prove that the deed, absolute on its face, was intended as a mortgage." Id. at 1365, citing Miss.Code Ann. § 89-1-47 (1972). APAC asserts that it changed the locks on the personal residence and that the Hollenheads were not in possession, thus no parol evidence should have been permitted. We do not understand the factual basis for APAC's changing locks on this residence, but we have already held that the instrument affected only the unsold lots on the subdivision and not the Hollenhead residence. There is no evidence that the Hollenheads parted with possession of the thirty unsold lots.
¶ 31. The fact that this deed was only to secure payment is evident from the simultaneously executed settlement agreement. The grantors, the Hollenheads, were not indebted to APAC. Hollenhead Construction has the debt. APAC claims that the warranty deed was given only to secure a moratorium against execution. However, the settlement agreement stated that the Hollenheads would make every effort to sell the property in order to satisfy the judgment and then the remaining property would be reconveyed. The agreement also provided that if the judgment was not paid by a date certain that "all rights of possession and ownership shall fully and without restriction be vested in APAC to deal with the property ... as it deems appropriate."
¶ 32. At the time of the agreement the default judgment totaled $192,000 and the unsold lots were worth approximately $240,000. APAC's counsel Bixler stated at trial that once the debt was paid APAC would reconvey the property to the Hollenheads. This deed was intended, when read in conjunction with the settlement agreement, as a mortgage to secure payment of the default judgment.
¶ 33. Once such a finding is made, "there is an express or implied promise to do whatever is necessary to reinvest title in the grantor upon payment of the debt." Harris, 451 So.2d at 1366. The chancellor granted APAC the authority to sell so many of the thirty lots as was necessary to satisfy the judgment against Hollenhead Construction. The chancellor *1221 also ordered that any property remaining after the satisfaction of the judgment be reconveyed to the Hollenheads. That remedy is not challenged on appeal, just the underlying factual finding of a mortgage. We find no error.
¶ 34. THE JUDGMENT OF THE CHANCERY COURT OF WEBSTER COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT, ONE FOURTH TO APPELLEE JHN, INC. AND ONE-FOURTH TO APPELLEES SAM AND JEANETTE HOLLENHEAD.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.