LEE, P.J.,
for the Court.
PROCEDURAL HISTORY
¶ 1. On January 4, 2002, Sheila Stinson[1] filed a complaint in the Lowndes County Chancery Court against Steven Hall and Karen Hall (the Halls), asking the court to declare a property transaction between her and the Halls null and void. Specifically, Stinson asked the court to declare a deed absolute to be a mortgage. After a trial, the chancellor, in his ruling on February 10, 2005, found the deed to be one absolute and not a mortgage, denied Stin-son relief and dismissed the case with prejudice. Aggrieved, Stinson appealed to this Court asserting two issues: (1) the chancellor erred in ruling that she failed to show by clear and convincing evidence that the instrument in question was a mortgage and not a deed absolute and (2) the chancellor erred in refusing to impose a constructive trust. Finding no error, we affirm.
FACTS
¶ 2. Stinson and her late husband were friends with the Halls. Mr. Hall had sold Mr. Stinson a life insurance policy and also helped Mrs. Stinson invest the proceeds from the policy after Mr. Stinson’s death in 1990. In early 1997, Mr. Hall learned Stinson was having financial problems and offered to help her by providing her financing to consolidate her mortgage debt and credit card debt. At the time Stinson owed around $16,800 on her land, which consisted of a 105 acre farm and residence. The Halls borrowed money and put up their own property as collateral in order to lend approximately $23,000 to Stinson. *889 The parties executed a promissory note, a land deed of trust and an option to purchase real estate. All three documents were executed on February 21,1997.
¶ 3. After making six payments to the Halls, Stinson defaulted on the loan in late 1997. Stinson agreed to sell her property to the Halls via warranty deed dated November 4, 1997. In consideration for the land, the Halls cancelled Stinson’s debt and paid other debts accumulated by Stin-son, including unpaid taxes and credit card debt. As part of the consideration, the Halls promised to allow Stinson and her parents to live on the property under certain conditions. On her 1997 tax return, Stinson reported the transaction as a sale.
STANDARD OF REVIEW
¶ 4. This Court has a limited standard of review in examining and considering the decisions of a chancellor. Ellison v. Meek, 820 So.2d 730, 734(¶ 11) (Miss.Ct.App. 2002). “When reviewing a chancellor’s decision, we will accept a chancellor’s findings of fact as long as the evidence in the record reasonably supports those findings. In other words, we will not disturb the findings of a chancellor unless those findings are clearly erroneous or an erroneous legal standard was applied.” Peagler v. Measells, 743 So.2d 389, 390(¶ 6) (Miss.Ct. App.1999). “The chancellor, as the trier of fact, evaluates the sufficiency of the proof based on the credibility of witnesses and the weight of their testimony.” Ellison, 820 So.2d at 734(¶ 11). The standard of review for questions of law is de novo. Id.
DISCUSSION
I. DID THE CHANCELLOR ERR IN RULING THAT STINSON FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT THE INSTRUMENT IN QUESTION WAS A MORTGAGE AND NOT A DEED ABSOLUTE?
¶ 5. In her first issue on appeal, Stinson argues that the chancellor erred in ruling that she failed to show by clear and convincing evidence that the instrument in question was a mortgage and not a deed absolute. “A deed absolute on its face may be found valid and effectual as a mortgage, if it were intended by the parties ‘to operate as a security for the repayment of money.’” Harris v. Kemp, 451 So.2d 1362, 1364 (Miss.1984). In order to prove that a deed was intended as a mortgage, the evidence must be clear and convincing. Id. Although there is no conclusive test to administer in determining whether a transaction was a mortgage rather than a deed absolute, the supreme court has noted helpful factors: the relation of the parties, the financial condition of the grantor, the property’s value, possession by the grantor, the conduct of the parties, the payment of taxes, any subsequent dealings between the parties and whether the debt has been extinguished by agreement of the parties. Id. at 1365. Furthermore, if the grantor retains possession of the property, parol evidence may be introduced to prove that the absolute deed was intended as a mortgage. See Miss.Code Ann. § 89-1-47 (1972).
¶ 6. From the record, it is clear that Stinson has failed to meet her burden in establishing that the deed was intended to be a mortgage. Stinson testified that there was no agreement between her and the Halls where she would be remain liable to them for any debt after the sale and conveyance of her property on November 4, 1997. Dick Rollins, Stinson’s CPA, testified that she told him that she had sold her property. Stinson declared the transaction to be a sale on her 1997 income tax return. Stinson did not inquire about the possibility of repurchasing the land until *890 several years after the transaction. The Halls allowed Stinson and her parents to remain in the house, and Stinson referred to herself as the Halls’s tenant.
¶ 7. There was some discrepancy in the record as to who paid the property taxes, the home insurance and the phone bill. Both parties asserted that they paid these bills, but the record gives more support to the Halls. Included in the record is a list of expenditures paid by the Halls on behalf of Stinson. The list includes a monthly phone bill, property taxes, federal and state taxes, home insurance and even car insurance. A copy of a check for $985 from Stinson to the Halls was included in the record. The check was remitted to the Halls in September 2001, and that is the only evidence of payment by Stinson. More importantly, Stinson was not under the assumption that she owed the Halls any money on a debt secured by the deed. The Halls also rented part of the property to Dwight Colson. Colson gave his rent checks to Stinson who then turned the checks over to the Halls.
¶ 8. We cannot find that the chancellor erred in determining that Stinson failed to prove by clear and convincing evidence that the deed was intended as a mortgage. This issue is without merit.
II. DID THE CHANCELLOR ERR IN REFUSING TO IMPOSE A CONSTRUCTIVE TRUST?
¶ 9. In her other issue, Stinson argues that the chancellor should have determined that she had a right to redeem her property and then impose a constructive trust for her benefit upon the legal title of the property. A constructive trust arises in order to prevent unjust enrichment by a person gaining property which rightfully belongs to someone else. McNeil v. Hester, 753 So.2d 1057, 1064(¶ 24) (Miss.2000). The supreme court has defined a constructive trust as follows:
A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.
Planters Bank & Trust Co. v. Sklar, 555 So.2d 1024, 1034 (Miss.1990) (citing Sojourner v. Sojourner, 247 Miss. 342, 353, 153 So.2d 803, 807 (1963)). A chancellor may construct a trust for the benefit of the party whose confidence has been abused. Davidson v. Davidson, 667 So.2d 616, 620 (Miss.1995). The existence of a constructive trust must be proven by clear and convincing evidence. McNeil, 753 So.2d at 1064(1125).
¶ 10. We do not find that the chancellor should have imposed a constructive trust after determining that the warranty deed was valid. Furthermore, we do note that Stinson, during questioning, stated numerous times that she did not think the Halls had treated her badly or forced her into signing the warranty deed or any other documents. This issue is without merit.
¶11. THE JUDGMENT OF THE LOWNDES COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ„ CONCUR.

. The day after filing her complaint Stinson married Ronnie Ray. For clarity we will refer to her by Stinson as it was her name during the events leading up the filing of the suit.