# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01704-COA

**MARK GIBSON, HL&C - LAURA VILLA LLC AND C&C SALES LLC**  APPELLANTS

**v.**

**RANDY R. SHOEMAKE AND GEORGIA M. SHOEMAKE**  APPELLEES

DATE OF JUDGMENT: 08/10/2017
TRIAL JUDGE: HON. JOHNNY LEE WILLIAMS
COURT FROM WHICH APPEALED: PEARL RIVER COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANTS: G. GERALD CRUTHIRD
ATTORNEY FOR APPELLEES: NATHAN S. FARMER
NATURE OF THE CASE: CIVIL - CONTRACT
DISPOSITION: AFFIRMED - 06/18/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., TINDELL AND McDONALD, JJ.

### TINDELL, J., FOR THE COURT:

¶1. Mark Gibson, HL&C - Laura Villa LLC, and C&C Sales LLC (collectively "the Appellants") entered into a contract with Randy Shoemake on March 23, 2004, for the sale and purchase of a tract of land and a mobile home ("the 2004 contract"). On July 21, 2010, HL&C - Laura Villa and Randy executed a second contract, without Georgia Shoemake's signature, extending the payment time period and the interest rate for the property ("the 2010 contract"). The Appellants now challenge the findings of fact, conclusions of law, and final judgment of the Pearl River County Chancery Court, which held that (1) the 2004 contract was valid and binding to the parties; (2) the 2010 contract did not constitute a reformation,

but rather, a brand new contract between the parties; (3) Georgia did not sign the 2010 contract, thereby making it void under Mississippi law; and (4) the Appellants' acceptance of Randy's final payment and handwritten "payoff" receipt fulfilled the 2004 contract pursuant to the accord and satisfaction doctrine. Upon review, we find that substantial evidence supports the chancellor's conclusions, and we therefore affirm the chancellor's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2. Randy and Georgia Shoemake were married on May 3, 1986, and were long-time residents of Pearl River County, Mississippi. Hoping to purchase a tract of land and a mobile home for Georgia and himself in their hometown, Randy entered into a contract for the purchase and sale of real property with C&C Sales on March 23, 2004. Mark Gibson ("Gibson"), who represented C&C Sales, drafted and executed the 2004 contract with the following terms: (1) The purchase price totaled $43,400; (2) Randy had to pay a $2,500 down payment with $1,500 of that down payment financed and payable in fifteen equal, consecutive, and monthly installments of $100; (3) The remaining $39,400 had to be paid in monthly installments of $426.12 for 120 months beginning on May 3, 2004; and (4) Randy had to pay the principal amount plus interest by the third day of every month until paid in full. The calculated interest for the property was approximately 5.4244% per annum. Upon the execution of the 2004 contract, no deed to the property was delivered to Randy or Georgia. The record indicates that the deed would be delivered to Randy upon satisfaction of the full purchase price of the property. Randy began making monthly payments thereafter,

2

and Gibson accepted the payments on behalf of C&C Sales.

¶3. Unbeknownst to the Shoemakes, at the time that the 2004 contract was executed, the title of the property was in the name of Philip J. Kahan according to an instrument dated September 9, 2003, that was located in the Chancery Clerk's office of Pearl River County. But Kahan conveyed the title to this property to HL&C - Laura Villa on June 3, 2009.

¶4. On July 21, 2010, Gibson requested that Randy sign a deed of trust in favor of HL&C - Laura Villa along with two separate promissory notes—one reflecting payment of the $39,400 in monthly installments of $426.12 for 240 months with an 11.79% interest, and the other reflecting a six-month payment plan of $426.12 to HLC - Laura Villa, LLC (the "2010 contract"). Although Randy signed these documents, Georgia did not sign the Deed of Trust or the two promissory notes. Afterward, Randy continued making payments and Gibson continued accepting said payments until 2014.

¶5. On September 3, 2014, Randy appeared before Gibson and presented him with a check for $1,278.36 and a receipt handwritten by Randy. The receipt was entitled "payoff" and stated, "Our Contract agreement fully met, its been nice doing business with you. Take care and God Bless." Gibson, individually and on behalf of the Appellants, accepted the check and the receipt and wrote on the receipt, "Received on September 3, 2014. Will review and get back with you in two weeks." Randy made no more payments on the property after this date. The Appellants, relying upon the 2010 contract, insisted that Randy owed an outstanding balance of $29,063.50 that Randy refused to pay. On February 20, 2015, the Appellants began foreclosure proceedings and demanded that Randy repay the outstanding

3

balance on the property. The Shoemakes then filed suit against the Appellants.

¶6. The chancellor held a trial on this matter on April 12, 2016, and the Shoemakes produced receipts executed on behalf of C&C, HL&C - Laura Villa, and/or Gibson, with dates ranging from March 19, 2004 through September 2014 (all having a combined total of $56,286.32). The receipts also showed that Randy made no further payments following their final payment in September of 2014. On August 10, 2017, the chancellor entered his findings of fact, conclusions of law, and final judgment. The chancellor found as follows: (1) the 2010 contract was not a reformation of the 2004 contract, but rather, a new contract; (2) because Georgia had a homestead interest in the subject property, her lack of signature on the 2010 Deed of Trust voided the Deed of Trust; and (3) the Appellants accepted Randy's final check in 2014 and thereby satisfied his indebtedness to the Appellants, pursuant to the doctrine of accord and satisfaction. The chancellor ultimately voided the 2010 contract and voided the foreclosure sale. The chancellor also imposed a constructive trust against the Appellants to hold title for the benefit of the Shoemakes and imposed an equitable lien against the property and any improvements on the property for the benefit of the Shoemakes. Finally, the chancellor voided any and all foreclosure sales against the property and enjoined the Appellants from interfering with the Shoemakes' title and quiet enjoyment of the property and improvements made on the property. The Appellants now timely appeal this judgment.

## STANDARD OF REVIEW

¶7. We apply a limited standard of review to appeals from chancery courts. *Harrison v.*

4

*Roberts*, 989 So. 2d 930, 932 (¶9) (Miss. Ct. App. 2008). We review the chancellor's findings to determine whether substantial evidence supports his conclusions. *In re Estate of Johnson*, 735 So. 2d 231, 236 (¶24) (Miss. 1999). Unless the chancellor's judgment was manifestly wrong, clearly erroneous, or applies an erroneous legal standard, the judgment should stand. *Carambat v. Carambat*, 72 So. 3d 505, 510-11 (¶24) (Miss. 2011). "The Court reviews questions of law, however, under a de novo standard." *Townsend v. Townsend*, 859 So. 2d 370, 372 (¶7) (quoting *Stacy v. Ross*, 798 So. 2d 1275, 1277 (Miss. 2001)).

**ANALYSIS**

**I.     REFORMATION**

¶8.     The Appellants first argue that the 2010 contract with Randy constituted a reformation of the original 2004 contract, contrary to the chancellor's ruling. After a full trial on the merits, the chancellor found that the Appellants failed to prove beyond a reasonable doubt that a reformation had occurred in 2010. Generally, a chancellor cannot modify the terms of an existing contract. *Id.* at 379 (¶28). "[R]eformation of a contract is justified only (1) if the mistake is a mutual one, or (2) where the mistake is on the part of one party and fraud or inequitable conduct on the part of the other." *Steinwinder v. Aetna Cas. & Sur. Co.*, 742 So. 2d 1150, 1155 (¶24) (Miss.1999). The Appellants argue that a mutual mistake was made in the drafting of the 2004 contract because of a scrivener's error that incorrectly scheduled the Shoemakes' payments on the property for 120 months rather than 240 months and also omitted the 11.719% interest rate that the parties intended. The chancellor also noted that Randy received a promissory note, a deed of trust, and a deed along with the 2010 contract,

5

whereas no deed was delivered with the 2004 contract. "A mutual mistake is defined as '[a] mistake that is shared and relied on by both parties to a contract.'" *Bert Allen Toyota Inc. v. Grasz*, 909 So. 2d 763, 768 (¶15) (Miss. Ct. App. 2005) (citing Black's Law Dictionary (8th ed. 2004)). In order to reform an existing contract, the Appellants must prove mutual mistake between the parties beyond a reasonable doubt. *APAC-Mississippi, Inc. v. JHN, Inc.*, 818 So. 2d 1213, 1218 (¶14) (Miss. Ct. App. 2002). "Parol testimony to reform must be received with 'great caution and distrust.'" *Watson v. Owen*, 146 Miss. 676, 107 So. 865, 866 (1926). The only way to reform a contract by mutual mistake is if the Appellants show that the initial contract did not accurately reflect the true intentions of all the parties. *Brown v. Chapman*, 809 So. 2d 772, 774 (¶8) (Miss. Ct. App. 2002).

¶9.    In their brief, the Appellants assert that the 2010 contract added no new terms or encumbrances on the land, but simply corrected the scrivener's error in the 2004 contract to reflect the sale originally contemplated and intended by the parties. But the 2010 contract doubled the payment schedule from the original 120 weeks (set forth in the 2004 contract) to 240 weeks and increased the interest rate from approximately 5.4244% to 11.79%. A seller is tasked with the duty to be careful and accurately represent the facts and terms of a contract. *Rhyne v. Gammil*, 215 Miss. 68, 77, 60 So. 2d 500, 502 (1952). The Shoemakes contracted with C&C Sales in 2004. As the chancellor stated in his opinion, HL&C - Laura Villa was not a party to the original contract, but rather a successor in interest to C&C Sales. Both companies are owned by Gibson, the drafter of both contracts in question. As such, Gibson had complete control over the language in both contracts, and any attempt to have

6

the 2010 contract act as a reformation could have been clearly identified in the language of that contract. But the 2010 contract made no reference to the 2004 contract whatsoever.

¶10.    Further, the Court is mindful of the vast differentiation in price between the 2004 and the 2010 contracts. At trial, the chancellor found that the total purchase price of the property was $43,400, with a $4,000 down payment, and that the remaining $39,400 should be paid in monthly installments of $426.12. Randy's consistent testimony about the 2004 contract at trial reflected that same understanding. For example, Randy testified as follows:

> Q.    What was said about the property and its purchase?
>
> A.    What are you–
>
> Q.    What was discussed between you and Mr. Gibson about the purchase of the real property?
>
> A.    Just, you know, the purchase price, you know, $4,000 and then the $39,400.

Further, the Shoemakes provided the chancellor with receipts of payment from March 19, 2004 to September of 2014. Each receipt was executed on behalf of the Appellants and reflected a total amount of $56,293.32. This total aligns with a calculation of $426.12 per month for 120 months plus interest, as reflected by the 2004 contract. Payments of $426.12 amortized over 240 months would total over $100,000. As the chancellor stated in his opinion, "Reformation cannot materially alter the previous contract without a clear expression of the parties to do so." *Watson*, 107 So. at 866. Because price is such a material term of a contract,[1] it is difficult for this Court to discern how the language in the 2004

---

[1] *See Grasz*, 909 So. 2d at 768 (¶12) ("[T]he Mississippi Supreme Court stated that 'a contract is unenforceable if the material terms are not sufficiently definite.' Price is an

contract, which, according to the Appellants, reflects only half of the purchase price and omits the interest rate entirely, can be considered a mere scrivener's error.

¶11. Further, over six years passed between the execution of both sets of documents. The burden of proof grows heavier upon the complainant by the lapse of time before seeking reformation. *Id*. The Appellants argue in their brief that the alleged scrivener's error was discovered immediately by the parties. According to the Appellants, Gibson immediately approached Randy to cure the alleged error, but Randy refused. But then Randy testified at trial that Gibson never contacted him about an error in the 2004 contract. Regardless, the evidence in the record suggests that the Shoemakes paid monthly installments pursuant to the 2004 contract, and Gibson accepted these payments on behalf of the Appellants during the six years between the contracts. Again, the Shoemakes' receipts reflected payments from March 19, 2004 to September of 2014 and were executed and signed by Gibson. Because Randy refused to reform the contract after being informed of the alleged mutual error, the Appellants could have sought relief from the court to reform the contract during these six years. No evidence in the record suggests that the Appellants ever attempted to do so. As such, the fact that Randy continued to make monthly payments for six years in accordance with the 2004 contract and the Appellants continued to accept those payments does not weigh in favor of reformation.

¶12. After reviewing all the evidence at trial, the chancellor found that the 2010 contract was not a reformation, but rather a new contract all together. Because we find substantial

---

essential term that must be stated with specificity.") (citing *Leach v. Tingle*, 586 So. 2d 799, 802-803 (Miss. 1991)).

8

evidence to support this conclusion, we agree with the chancellor and find that a new contract was formed in 2010.

## II. MISSISSIPPI CODE ANNOTATED SECTION 89-1-29 (REV. 2008)

¶13. Because we find that the 2010 contract was a new contract rather than a reformation, we now focus on whether the chancellor erred by declaring that contract void. In his order, the chancellor found that, because Georgia had not signed the deed of trust as a part of the 2010 contract, the contract was void pursuant to Mississippi homestead law. To claim a homestead exemption in this state, one must be "a Mississippi resident and a householder who occupied the land and house in question as a residence." *In re Franzke*, 634 So. 2d 117, 120 (Miss. 1994). For married couples, Mississippi Code Annotated § 89-1-29 provides that:

> A conveyance, mortgage, deed of trust or other incumbrance upon a homestead exempted from execution shall not be valid or binding unless signed by the spouse of the owner if the owner is married and living with the spouse or by an attorney in fact for the spouse.

The statute was passed "primarily as a protection for the wife in lieu of dower which had been abolished by statute." *Grantham v. Ralle*, 158 So. 2d 719, 724 (Miss. 1963). The basic purpose of Section 89-1-29 was to protect the wife should her husband attempt to convey or encumber the homestead without her consent. *Hudson v. Bank of Leakesville*, 249 So. 2d 371, 373 (Miss. 1971). An instrument that does not satisfy this statute is void and inoperative, even as to the spouse who did sign the instrument. *Avakian v. Citibank N.A.*, 773 F.3d 647, 650 (5th Cir. 2014) (citing *Welborn v. Lowe*, 504 So.2d 205, 207-08 (Miss. 1987)). We determine the validity of the instrument based upon the circumstances surrounding its

9

execution. *Caddock v. Brinkley*, 671 So. 2d 662, 665 (Miss. 1996). Also, a spouse cannot waive any requirement of the statute, and no subsequent action may cure its invalidity. *In re Ramsey*, 424 B.R. 217, 222 (Bankr. N.D. Miss. 2009).

¶14. The Appellants first assert that Randy failed to disclose his marriage during the time periods surrounding the 2004 and 2010 contracts. But there is no evidence in the record to suggest that the Shoemakes attempted to hide their marriage. In fact, the record reflects that Georgia initially found the purchase property and contacted Gibson about it. Also, once the 2004 contract was signed, the utilities were listed under Georgia's name. The Appellants offer no proof to refute these facts, and therefore, this argument lacks merit.

¶15. The Appellants also assert that Section 89-1-29 does not apply here because the 2010 contract and Deed of Trust served as purchase money lien to renew the encumbrances brought about by the 2004 contract. Once the 2004 contract was signed, the Shoemakes began to occupy the property together and making improvements to the property, and thereby, impressing the property with the character of a homestead. *See In re Rhymes*, No. 0553572ERG, 2008 WL 723975, at *4 (Bankr. S.D. Miss. Mar. 14, 2008). At the time of the 2010 contract, Randy had already made a majority of the payments pursuant to the 2004 contract, giving the couple an equitable interest in the property. Once Randy made the final payment under that contract, the Appellants were required to deliver a deed to the couple. Because we find that the 2010 contract is a separate and new contract for the purchase and sale of the property, Georgia's signature was required, and this requirement cannot be waived. We therefore agree with the chancellor on this issue, and we find the 2010 contract

10

null and void.[2]

## III. ACCORD AND SATISFACTION

¶16. The Appellants also challenge the chancellor's finding that the 2004 contract was paid in full on September 3, 2014, pursuant to the doctrine of accord and satisfaction. Mississippi law requires that the following four elements be met for accord and satisfaction to exist: (1) something of value must be offered "in full satisfaction of a demand"; (2) the offer must be "accompanied by acts and declarations [that] amount to a condition that if the thing is accepted, it is accepted in satisfaction"; (3) "the party offered the thing of value" must "understand that if he takes it, he takes subject to such conditions"; and (4) the party offered the item must "actually . . . accept the item. *Stewart v. Bridge Props. LLC*, 62 So. 3d 979, 986-87 (¶18) (Miss. Ct. App. 2010) (quoting *Waggoner v. Williamson*, 8 So. 3d 147, 156 (¶ 18) (Miss. 2009)). "An agreement of accord and satisfaction must have all the essentials of a contract and may be express, or implied from the circumstances." *Cook v. Bowie*, 448 So. 2d 286, 287 (Miss. 1984) (citing *Roberts v. Finger*, 86 So. 2d 463, 465 (Miss. 1956)).

¶17. On September 3, 2014, Randy appeared before Gibson with a check in the amount of $1,278.36. Randy also prepared and presented Gibson with a handwritten receipt which stated "Our Contract agreement fully met, its been nice doing business with you. Take care

---

[2] The Court also notes that no consideration was offered in the making of the 2010 contract. Where no consideration exists, no contract can be formed. *Ferguson v. Mississippi Farm Bureau Cas. Ins. Co.*, 147 So. 3d 374, 379 (¶14) (Miss. Ct. App. 2014). Also, an agreement to do what one has already bound himself to do in a separate legal agreement does not constitute consideration for a new contract. *Leggett v. Vinson*, 155 Miss. 411, 124 So. 472, 474 (1929). There appears to be no validation for the 2010 contract, which essentially doubles the price of the property while offering nothing else to the Shoemakes in exchange.

and God Bless." According to the Appellants, Gibson signed the receipt but refused to recognize this payment as full satisfaction of the Shoemakes' debt. Gibson wrote "Received on September 3, 2014. Will review and get back with you in two weeks" on Randy's receipt. The Appellants now assert that Gibson's note did not constitute acceptance of Randy's check as a final payment and that Randy was obligated to pay the remaining balance owed under the 2010 contract. Because we find that the 2010 contract is void, we only examine whether the acceptance of Randy's final check satisfied the debt owed under the 2004 contract.

¶18. The Shoemakes contend that, because they offered the $1,278.36 check as a full and final payment of their debt on the property, under Mississippi law, Gibson could not attempt to alter the conditions of the payment; he was only obligated to accept or reject the check. The Court would note that Gibson did not actually alter the conditions of the check, rather he intended to review the check and report back to the Shoemakes two weeks later. But upon reviewing all the evidence, including the Shoemakes' payment receipts, which concluded with that final September 2014 check, the chancellor found that Gibson had accepted the check in full satisfaction of the debt. This Court has recently held that, "[D]espite whatever contentions a party may have to the contrary," when a creditor accepts and cashes a check which acts as a final payment of a debt, that creditor has accepted the check in satisfaction of the debt pursuant to accord and satisfaction. *Triangle Constr. Co. v. Fouche & Assocs. Inc.*, 218 So. 3d 1180, 1185 (Miss. Ct. App. 2017). As such, we hold that the chancellor's finding of accord and satisfaction was supported by substantial evidence.

## CONCLUSION

12

¶19.    After a full trial on the merits of this case, the chancellor found that the intentions of the parties were fully manifested in the 2004 contract. The 2010 contract was executed after six years of continuous payments and acceptance of such payments by the parties. Also, the evidence did not show that the parties were mutually aware of and attempted to correct a mere scrivener's error in the 2004 contract. We therefore agree with the chancellor that the Appellants failed to illustrate a mutual mistake beyond a reasonable doubt, and the 2010 contract constitutes a new, separate contract rather than a reformation.

¶20.    We further find that the Shoemakes intended for the property in question to act as their homestead property. Because we find that the 2010 contract is its own distinct instrument, without Georgia's signature and valid consideration, the contract is void. Finally, we find that Gibson, on behalf of the Appellants, accepted and cashed the check, marked as the final payment of the contract. By doing so, the chancellor held that Randy's contractual obligations were extinguished pursuant to the doctrine of accord and satisfaction. Upon review of the record, we find that substantial evidence supports the chancellor's conclusions. For these reasons, the chancellor's findings of fact, conclusions of law, and final judgment are hereby affirmed.

¶21.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. J. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**