LAMAR *v.* LANE *et al.*

(Division B.   May 14, 1934.)

[154 So. 709.   No. 31254.]

**E. L. Lamar,** of Calhoun City, and **Creekmore & Creek-more,** of Jackson, for appellant.

Auvergne Williams, of Memphis, Tennessee, and Mc-
Farland & Holmes, of Aberdeen, for appellees.

Griffith, J., delivered the opinion of the court.

On August 28, 1930, appellant, W. W. Lamar, was a

merchant in the town of Bruce in Calhoun county. He had become heavily involved in debt and was engaged in an effort to secure extensions of time. Among his creditors was the William R. Moore Dry Goods Company of Memphis. Appellant had dealt with this firm for many years. Appellee V. G. Lane was then and is now the vice president and treasurer of the said firm. On the date mentioned, appellant called on Mr. Lane in Memphis and proposed to give a mortgage or deed of trust on all the real property owned by him in Calhoun county, including his residence, this mortgage to be given to Mr. Lane as trustee for all appellant's mercantile creditors, and with the understanding that Mr. Lane would thereupon arrange with the other creditors for extensions of time. There was a first mortgage on all the property, held by the People's Bank of Calhoun City, and it was understood that the proposed mortgage would be second to the bank mortgage and that Mr. Lane would have nothing to do with any effort to obtain an extension from the bank, appellant was to look after that particular matter himself.

During the interview at Memphis aforesaid, appellant produced a list of lands owned by him. This list included three descriptions of country farm lands, and two descriptions of town property, in the town of Bruce. Mr. Lane knew nothing of these descriptions or of their exact locations, and relied solely on appellant in respect to them, as appellant well knew. The first description of the town property was the lot upon which the store building owned by appellant was located. The second description was as follows: "Two acres more or less in Northeast corner of Lot B in Black 18." Appellant represented to Mr. Lane that appellant's residence was located on the description last mentioned, and Mr. Lane noted that representation on the margin of the description. The arrangement was agreed upon as above outlined, and Mr. Lane procured an attorney to draw the deed of trust, which was done and in a few days the instrument was

sent to appellant. In the deed of trust the description of what Mr. Lane supposed was the residence and homestead of appellant was in the following words and figures: ''Two acres more or less in the northeast corner of Lot B in Block 18 of the town of Bruce, Mississippi, and including the residence thereon.'' The deed of trust was duly signed and acknowledged by appellant and his wife, and was thereafter recorded.

As a matter of fact the residence and homestead of appellant was not situated on the lot above described, but the residence of appellant was a lot one hundred seventy-eight by one hundred eighty, in dimensions by feet, and is described as lot 3 of lot C in block 18, the two descriptions being separated by an alley twenty feet wide on the map of the official survey of the town; and, as a matter of fact, there was no residence on the two-acre lot in block B described in the deed of trust.

Some months after the execution of the deed of trust, it was discovered by the trustee that the lot description did not specifically include the home of appellant, and a bill was filed for reformation of the instrument. Answer was filed by appellant and his wife denying the material allegations of the bill, but before the trial Mrs. Lamar died. On the hearing the chancellor rendered a decree sustaining the bill and ordering the reformation of description as prayed.

The record is utterly silent as to any part taken by Mrs. Lamar in this transaction except solely that she signed the deed of trust. There is not a word as to her intentions or understanding except that carried by the face of the instrument. We think the evidence, all taken together, discloses without any serious doubt that Mr. Lamar did not intend actually to include in the mortgage the homestead lot; he intended to mortgage exactly the two-acre lot described in the mortgage; but he intended to lead the mortgagee to believe that the two-acre lot described was the lot upon which the home was situated,

and the mortgagee relied upon the representations made by Lamar that the homestead was upon the lot described. Conceding for the sake of the argument that this is entirely sufficient to support a decree of reformation as to Lamar, our difficulties arise in the inquiry as to what may be considered as proved against Mrs. Lamar. Federal Land Bank v. Miles (Miss.), 152 So. 472. Can we conclude that because Mr. Lamar had represented to the mortgagees that the homestead was the two-acre lot, and had thereby deceived them, as he intended to do, Mrs. Lamar knew of this representation and intention on the part of her husband and knowingly joined him in the scheme? If so, we must infer, without proof, that Lamar told his wife of his deceit. But exactly the opposite must be inferred as a reasonable probability.

This leaves the inference that she was a conscious party to a scheme to mislead and deceive, to depend simply upon the recital in the deed that the two-acre lot described therein includes the residence thereon, when, in fact, there was no residence thereon. If we could infer that Mrs. Lamar knew from the description on paper exactly where the two-acre lot described was situated, and therefore that she knew there was no residence on it, then upon this inference we could draw the further inference that she knew there was something erroneous in the recital that the two-acre lot had a residence on it; but to what particular thing or error would this specifically direct her mind? What specifically as to any actual impression made upon her mind, and with any certainty, may we infer from this noticeable error, other than that there was simply an error in recital? It is not sufficient that a particular inference out of several inferences may be here drawn. If we are to infer that Mrs. Lamar knew from its description exactly where the two-acre lot was situated, then for equal or even more reason we must infer that she knew exactly the description upon which her home was situated, and thus we arrive at the point that she

knew from the deed that it did not describe her home, and thereupon we are confronted with the further inference as one being entirely reasonable, as well as the more probable, that when she saw her home was not included she did not concern herself with the other descriptions or recitals in the deeds as being something that did not definitely concern her, which is to say, that no conscious purpose or intention was developed or formed upon her mind further than that her home was not described and therefore was not included.

But let us infer that she did not know the description upon which her home was located, and this may be the more easily inferred because few women are acquainted with land descriptions. And if that inference is to be drawn, then with equal or even more reason we can infer that she did not know the location of the two-acre lot by its description on paper. Thus we may arrive at the further inference that, seeing the description of a two-acre lot with a residence thereon, she thought she was mortgaging her home by using that description. But here we are confronted with an insurmountable difficulty in the fact that her home lot did not contain two acres, but much less than that area. Certainly we cannot infer that she did not know the size of her homestead lot, but the inference is that she did know the size, from which it follows that she knew when she signed the deed to a two-acre lot that this was not her homestead lot.

Since all sustainable inferences are that when she signed the mortgage she knew she was not including her home in its descriptions, and since she had made no agreement with, or representations to, the mortgagee that she would include the home therein, and since the testimony is utterly silent of any proof that she actually intended to include her home, we are driven back to the original question whether the recital that the two-acre lot had a residence on it is sufficient to convict her of consciously participating in the scheme of her husband, of which

scheme she knew nothing, to deceive the mortgagee in his oral representations that the two-acre lot contained the residence, and that question we are constrained to answer in the negative. The proof fails to sustain such a conviction clearly and convincingly, to such a degree as to leave no considerable doubt. If only a preponderance of the evidence were necessarry, we might be content to allow the decree to stand, but the proof must rise far above a mere preponderance in a case like this, as is well settled in the law.

Nor do we think the case is substantially aided by the subsequent recitals in the deed of trust as follows: ''The grantors waive any and every right of redemption and homestead under the laws of Mississippi. Said land is encumbered by a prior deed of trust to the Peoples Bank for approximately four thousand dollars.'' These are general recitals not calculated to distinctly challenge the attention of a housewife, or any layman, not trained to the technicalities and import of legal terms, in such a definite way as that out of that circumstance we can ascribe with certainty any specific intention actually entertained in respect to particular descriptions used in the instrument when there are several such descriptions. It would be a dangerous thing, one not guarded with caution, to hold that the recitals in a deed of trust to the effect that it is a second deed is sufficient evidence, or amounts to much proof, that it was intended or understood that the second embraced all the property embraced in the first when there are several separate parcels in each of them. The evidence to sustain a bill to reform must be received and examined with great caution. Watson v. Owen, 142 Miss. 676, 684, 107 So. 865. What we are considering here, as we must, is what Mrs. Lamar actually and consciously intended as a matter of fact, and it is not sufficient to sustain the burden on that issue that we may strongly suspect that she intended to include her homestead, or even if the greater number of

the admissible inferences point in that direction, the proof, we repeat, must be weighed with great caution and must remove all considerable doubt on that question.

And since, according to the record before us, all the proof as against Mrs. Lamar is found in the terms of a single written instrument and solely therein, we must act here entirely, or at least largely, upon our own construction of that instrument, as well as to the inferences to be drawn therefrom. Northern Assurance Co. v. Lumber Co., 105 Miss. 688, 63 So. 209.

Reversed and remanded.