909 So.2d 763 (2005)
BERT ALLEN TOYOTA, INC., Appellant
v.
Horst F.G. GRASZ, Appellee.
No. 2004-CA-01622-COA.
Court of Appeals of Mississippi.
August 23, 2005.
*765 Jonathan Kirk Clark, Tim C. Holleman, attorneys for appellant.
Dale Robinson, attorney for appellee.
EN BANC.
CHANDLER, J., for the Court.
¶ 1. Horst Grasz reached an agreement with Bert Allen Toyota to buy a 2003 Toyota Tacoma for $16,971, less a $1,000 rebate, plus taxes and fees. The sales manager entered these numbers into a computer, which displayed a final price of $15,017.50. If the computer had made the computations correctly, the price would have been $17,017.50. Grasz attempted to write a check for $15,017.50 immediately, but the sales manager requested only a $500 deposit because the truck would have to be specially manufactured. The sales manager manually wrote on the sales agreement, "$14,517.50 due @ delivery."
*766 ¶ 2. The truck arrived at the dealership approximately four weeks after the parties agreed to the price. At that time, the sales manager discovered the computational error, and he insisted that Grasz pay an additional $2,000 over and above the agreed-upon price in order to take delivery of the truck. Grasz refused to pay the higher price and filed a complaint in the Harrison County Chancery Court. The chancellor entered judgment in favor of Grasz, finding that the sales agreement to purchase the truck for $15,017.50 was a contract that was clear and unambiguous on all terms, including price. The chancellor granted Grasz's request for specific performance, ordering Bert Allen Toyota to supply an unused 2003 Tacoma for the price of $15,017.50. Bert Allen Toyota appeals, raising the following issues:
I. WHETHER THERE WAS A MEETING OF THE MINDS BETWEEN THE PARTIES
II. WHETHER THERE WAS A UNILATERAL MISTAKE, OR ALTERNATIVELY, A MUTUAL MISTAKE, WHICH WARRANTED REFORMATION OR RECISSION OF THE CONTRACT
III. WHETHER THE CHANCELLOR'S FINDING THAT THE CONTRACT WAS "CLEAR AND UNAMBIGUOUS" WAS MANIFESTLY WRONG
IV. WHETHER THE COURT ERRONEOUSLY ORDERED SPECIFIC PERFORMANCE
We affirm in part and reverse and remand in part.

FACTS
¶ 3. During the spring of 2003, Horst Grasz wanted to purchase a 2003 Toyota Tacoma pickup truck. He visited Bert Allen Toyota on several occasions in an effort to negotiate a purchase. Throughout the negotiations process, Grasz made it clear that he intended to pay cash for the truck and was unwilling to spend more than $15,000 for his purchase. Everyone at Bert Allen Toyota knew that Grasz was a tough negotiator.
¶ 4. Kevin Gabbert is a sales manager for Bert Allen Toyota and had been working in that capacity for eight years. As the sales manager, it is Gabbert's responsibility to approve all sales, including checking the math on the paperwork submitted to him for approval. On April 2, 2003, Gabbert offered to sell Grasz a 2003 Tacoma for $16,951,[1] less a rebate of $1000, plus tax and title. He entered the numbers into a computer, which generated a four-page document which listed all the specifications for the truck as requested by Grasz, as well as the price of the vehicle. The purchase information sheet reads:

 Cash price $16,951.00
 Cash Down/ Rebate[2] $ 1,000.00
 Total fee options $ 209.00
 Total Tax Amount $ 857.50
 Payment $15,017.50

A mathematical error occurred because the computer miscalculated the numbers. If the computer had correctly added the numbers, the final price would have been $17,017.50. Both Gabbert and Grasz testified that they never manually calculated the numbers on the computer generated contract.
¶ 5. The cash price of $16,951, the rebate of $1,000, and the amount of $15,017.50 marked "amount financed" were highlighted in yellow and given to Grasz for review. The offer to sell the truck was quoted as "$16,951.00 less a rebate of $1,000.00 plus *767 tax and title." The document listed the agreement as "Deal Number 15031" and "Contract Date 04/02/03." In four separate places, the document listed the selling price as $15.017.50. This amount was listed in the areas marked "payment," "total financed," "total of payments," and "unpaid balance." Gabbert circled the price as $15,017.50 and hand wrote the word "everything" directly below the sum of $15,017.50.
¶ 6. Grasz attempted to write a check for the amount of $15,017.50 immediately. Gabbert explained that the truck had to be ordered and built to Grasz's contract specifications. Gabbert instead requested a $500 deposit, which Grasz paid with a credit card. Gabbert wrote at the bottom of the agreement, "14,517.50 due @ delivery." The computer generated documents were given to Grasz. Gabbert testified that he believed he had performed something miraculous for negotiating a deal with Grasz. Everyone at Bert Allen Toyota celebrated for having closed the deal.
¶ 7. Approximately four or five weeks later, the truck arrived from Toyota Motor Corporation to Bert Allen Toyota. Gabbert prepared the final paperwork, at which time he claimed to have discovered an error in the original purchase price. Gabbert testified that this was the first time he had seen the error and the first time he had checked the math of the computer, even though he had knowledge that the computer had miscalculated the sales price on two separate occasions. Gabbert notified Grasz of the mistake and told him that the actual purchase price was $17,017.50. Grasz was advised that if he did not accept, the dealership would sell the vehicle to someone else. Grasz refused and demanded the original due on delivery price of $14,517.50.
¶ 8. The next day, a Saturday, Grasz presented a check in the amount of $14,517.50 to the dealership and demanded the truck. A representative of the dealership took the check but refused to deliver the truck. On Monday, Grasz returned to the dealership and demanded the truck. Gabbert demanded an additional $2,000. Grasz refused, and Gabbert returned Grasz's check. Allen Toyota credited Grasz's credit card with his $500 deposit. Bert Allen Toyota eventually sold the truck to someone else.
¶ 9. Grasz filed a lawsuit in the Harrison County Chancery Court seeking specific performance. The chancellor found that the parties had entered into a clear and unambiguous contract. Furthermore, the chancellor found that the parties treated the written agreement as a contract and behaved in accordance with having reached a contract; that there was a meeting of the minds as to all essential elements of the contract, including a definite selling price; and that there was an unqualified offer by Allen Toyota and an unqualified acceptance by Grasz. The chancellor found that the mathematical error did not "create an unconscionable advantage in favor of Grasz resulting in an intolerable injustice thereby allowing for recission of the contract." The court granted Grasz's request for specific performance and ordered Bert Allen Toyota to supply an unused 2003 Toyota Tacoma.

ANALYSIS
¶ 10. Findings of fact made by a chancellor will not be disturbed unless the lower court abused its discretion, was clearly erroneous, or applied an erroneous legal standard. Bowers Window and Door Co., Inc. v. Dearman, 549 So.2d 1309, 1313 (Miss.1989). This Court does not reverse the findings of the chancery court where there is substantial evidence supporting those findings. Cooper v. Crabb, 587 So.2d 236, 239 (Miss.1991).

*768 I. WHETHER THERE WAS A MEETING OF THE MINDS BETWEEN THE PARTIES
¶ 11. Allen Toyota argues that the testimony of Grasz himself established that the price of the truck was $16,951.00, less a rebate of $1,000, plus fees and taxes. As a result, argues Allen Toyota, the unpaid balance listed on the purchase information sheet was not an offer but a miscalculation. In addition, Gabbert reaffirmed the offer by highlighting the cash price of $16,951.00 and the rebate of $1,000.00. Grasz acknowledges that there was an arithmetic error, but he contends that he was interested only in the bottom line and did not notice the error. Grasz testified that he thought he was purchasing a 2003 Toyota Tacoma for the bottom line price amount of $15,017.50, while Gabbert believed he was selling the vehicle for $16,951, less a rebate, plus tax and title. Therefore, argues Allen Toyota, there was no meeting of the minds.
¶ 12. The existence of a contract is a question of fact that is to be determined by a jury, or a trial judge when a trial is conducted without a jury. Hunt v. Coker, 741 So.2d 1011, 1014(¶ 6) (Miss.Ct. App.1999) (citing 75A Am.Jur.2d Trial § 791 (1991)). The elements of a valid contract are (1) two or more contracting parties; (2) consideration; (3) an agreement that is sufficiently definite; (4) parties with the legal capacity to make a contract; (5) mutual assent; and (6) no legal prohibition precluding contract formation. Rotenberry v. Hooker, 864 So.2d 266, 270(¶ 13) (Miss.2003). In Leach v. Tingle, 586 So.2d 799, 802 (Miss.1991), the Mississippi Supreme Court stated that "a contract is unenforceable if the material terms are not sufficiently definite." Price is an essential term that must be stated with specificity. Id. at 803. The only contractual element contested in the present case is the price.
¶ 13. The chancellor concluded that Grasz and Bert Allen Toyota reached a contract. The document upon which the parties acted stated "contract date: 04/02/03." The parties behaved in accordance with having reached a contract, as evidenced by Grasz's offer to pay the full price of the truck immediately, the celebration held by Gabbert and his sales staff for having made a sale to Grasz, and Gabbert's ordering of the vehicle pursuant to the specifications contained in the sales purchase agreement.
¶ 14. At the time of negotiations with Grasz, Gabbert knew the invoice price of the truck; the profit margin; the amount of the rebate; the fact that Grasz was unwilling to spend more than $15,000; the fact that Grasz was a tough negotiator; and the fact that the computer had miscalculated sales figures in the past. The chancellor's finding that the parties had reached a meeting of the minds, including a definite agreement on the price of the truck, was supported by the evidence.

II. WHETHER THERE WAS A UNILATERAL MISTAKE, OR ALTERNATIVELY, A MUTUAL MISTAKE, WHICH WARRANTED REFORMATION OR RESCISSION OF THE CONTRACT

(A) Mutual Mistake
¶ 15. A mutual mistake is defined as "[a] mistake that is shared and relied on by both parties to a contract." Black's Law Dictionary (8th ed.2004). Bert Allen Toyota contends that there was a mutual mistake between the two parties, claiming that both parties believed that the offer was $16,951, less the rebate, plus tax and title. Grasz claims that he cared only about the bottom line. The remedy for mutual mistake is reformation. Townsend *769 v. Townsend, 859 So.2d 370, 376(¶ 21) (Miss.2003).
¶ 16. In order to reform a contract on the ground of mutual mistake, the evidence must be clear and convincing. Hartford Fire Ins. Co. v. Associates Capital Corp., 313 So.2d 404, 408 (Miss.1975) (citing Lamar v. Lane, 170 Miss. 260, 154 So. 709 (1934); St. Paul Fire & Marine Ins. Co. v. McQuaid, 114 Miss. 430, 75 So. 255 (1917); Mosby v. Wall, 23 Miss. 81 (1851)). The Mississippi Supreme Court has stated that the proof must establish mutual mistake beyond a reasonable doubt. Id. (citing Rogers v. Clayton, 149 Miss. 47, 115 So. 106 (1928); Progressive Bank of Summit v. McGehee, 142 Miss. 655, 107 So. 876 (1926)).
¶ 17. Bert Allen Toyota claims that a mutual mistake existed because both parties relied upon the dealership's computer to calculate the fees and taxes on the truck and to add these figures to the offered cash price of $16,951, less the $1,000 rebate. Bert Allen asserts that both parties were incorrect, and that a mutual mistake took place because both parties were wrong for failing to double-check the computer's arithmetic. However, Bert Allen Toyota does not claim that Grasz was responsible for the computational error. Moreover, as recognized by the chancellor, "[t]here's just so many things that go into the marketing of a car that is creative marketing that I think that the customer looks at the bottom line." This Court finds that Bert Allen Toyota failed to prove mutual mistake beyond a reasonable doubt. Therefore, we affirm on this issue.

(B) Unilateral Mistake
¶ 18. The chancellor found that the computational error was a unilateral mistake on the part of Bert Allen Toyota. The remedy for unilateral mistake is rescission. Rotenberry, 864 So.2d at 270(¶ 15). However, rescission on the grounds of unilateral mistake is inappropriate unless a four-part test is met. First, the mistake was of so fundamental a character that the minds of the parties have not, in fact, met. Second, there was no gross negligence on the part of the plaintiff. Third, no intervening rights have accrued. Fourth, the parties may still be placed in status quo. Mississippi State Bldg. Comm'n v. Becknell Const., Inc., 329 So.2d 57, 60-61 (Miss.1976). In addition, "as a general proposition, equity will not act to rescind a contract where the mistake was induced by the negligence of the party seeking rescission." Turner v. Terry, 799 So.2d 25, 36(¶ 36) (Miss.2001).
¶ 19. Because there are no Mississippi cases concerning rescission of a contract based exclusively on a computational error, Bert Allen Toyota relies on judicial precedent from other jurisdictions. One case upon which Bert Allen Toyota relies is S.T.S. Transport Service, Inc. v. Volvo White Truck Corp., 766 F.2d 1089 (7th Cir.1985). "In the typical case of this sort [where a party is mistaken as to the price], a seller or contractor will miscalculate in adding up a list of items. Under the appropriate circumstances courts will now recognize a right to avoidance of this sort of mistake." Id. at 1092. Under Illinois law, where there is a mistake as to price, "[t]he mistake must ... have occurred despite the exercise of reasonable care." Id. at 1093. Mississippi law, like Illinois law, will not allow rescission of a contract if, in the exercise of reasonable care, an error would have been detected. Hunt v. Davis, 208 Miss. 710, 725, 45 So.2d 350 (1950). In S.T.S., the Seventh Circuit affirmed the district court and allowed rescission of the contract because the computational error, once made, would not have been easily detected. S.T.S., 766 F.2d at 1093. In the present case, the chancellor specifically *770 found that Gabbert failed to use reasonable care. This finding was supported by the evidence, given Gabbert's knowledge of the cost of the vehicle, the profit margin for the dealership, and the fact that Gabbert manually subtracted the $500 down payment from the asking price of $15,017.50.

III. WHETHER THE CHANCELLOR'S FINDING THAT THE CONTRACT WAS "CLEAR AND UNAMBIGUOUS" WAS MANIFESTLY WRONG
¶ 20. "An instrument that is clear, definite, explicit, harmonious in all its provisions, and is free from ambiguity" will be enforced. Pursue Energy Corp. v. Perkins, 558 So.2d 349, 352 (Miss.1990). Bert Allen Toyota argues that the chancellor's finding of a clear and unambiguous contract is manifestly wrong, because it is impossible to subtract $1,000 from $16,951, add $209 and $857.50, and arrive at a price of $15,017.50.
¶ 21. The Mississippi Supreme Court adopts a three-tier approach to contract interpretation. First, the "four corners" test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement. Pfisterer v. Noble, 320 So.2d 383, 384 (Miss.1975). If the language used in the contract is clear and unambiguous, the inquiry stops, and intent of the contract must be realized. Id. Vagueness and ambiguity are more strongly construed against the party drafting the contract. Lamb Const. Co. v. Town of Renova, 573 So.2d 1378, 1383 (Miss.1990). Only when the intent of the parties is not clear should the court resort to extrinsic evidence. Perkins, 558 So.2d at 353.
¶ 22. The chancellor found that the contract was clear and unambiguous, holding that the price of the truck was stated with specificity. The chancellor reached this finding by noting that the price of $15,017.50 was listed in four places and highlighted one place with the handwritten word "everything" under the highlighted price. Grasz offered to pay the sales price in full, but Gabbert requested only a down payment of $500. Gabbert also circled another sales price listing for the truck showing $15,017.50 and wrote "$14,517.50 due @ delivery" at the bottom of the sales purchase agreement. Gabbert manually subtracted the $500 down payment from the asking price of $15,017.50. Under these facts, this Court holds that the chancellor was correct in finding that all terms of the sales purchase agreement, including price, were clear and unambiguous.

IV. WHETHER THE COURT ERRONEOUSLY ORDERED SPECIFIC PERFORMANCE
¶ 23. The chancellor granted Grasz's request for specific performance, and ordered Bert Allen Toyota to supply an unused 2003 Toyota Tacoma truck for $15,017.50. The truck Bert Allen Toyota specially ordered was sold and could no longer be sold as a new truck. Bert Allen Toyota claims that the chancellor erred in fashioning this remedy, because this relief was granted at the time of the trial in 2004, when 2003 models were no longer in production. Grasz claims that the relief was appropriate, because Bert Allen Toyota presented no proof to show that Grasz's truck was sold or that the Toyota Motor Company refused to supply another 2003 truck.
¶ 24. "[W]here a contracting party can feasibly be given what he bargained for, specific performance is the preferred remedy." Frierson v. Delta Outdoor, Inc., 794 So.2d 220, 224(¶ 13) (Miss.2001) (citing Osborne v. Bullins, 549 So.2d 1337, 1339 (Miss.1989)). It is not clear from the record *771 whether Bert Allen Toyota, at this point in time, would be able to supply a 2003 truck with the specifications Grasz requested. We remand this issue to the chancery court to determine whether Bert Allen Toyota is unable to supply an unused 2003 truck with the appropriate options Grasz specified.
¶ 25. A chancellor is entitled to grant any relief "which the original bill justifies and which is established by the main facts of the case, so long as the relief granted `will not cause surprise or prejudice to the defendant.'" Crowe v. Crowe, 641 So.2d 1100, 1104 (Miss.1994) (quoting Smith v. Smith, 607 So.2d 122, 127 (Miss. 1992)). On remand, if the chancellor finds that it is not feasible for Bert Allen Toyota to supply an unused 2003 vehicle, the chancellor is free to fashion other equitable remedies.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.
NOTES
[1] $16,951 is $300 over the dealer cost.
[2] Gabbert manually wrote the word "rebate" in the sales purchase agreement.