# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01584-COA

**ODELL DORMAN, JR. AND RENODDA A.**             **APPELLANTS**
**DORMAN A/K/A RENODDA DORMAN**

**v.**

**TRUSTMARK NATIONAL BANK, SUCCESSOR**         **APPELLEE**
**TO HERITAGE BANKING GROUP**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/10/2017 |
| TRIAL JUDGE: | HON. CHRISTOPHER A. COLLINS |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | MARK K. TULLOS |
| | CRAIG N. ORR |
| ATTORNEYS FOR APPELLEE: | STEPHANIE M. RIPPEE |
| | WILLIAM F. RAY |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 05/07/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND LAWRENCE, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1. After Trustmark National Bank (Trustmark) foreclosed on Odell and Renodda Dorman's property and evicted them from their residence, the parties discovered that the deed of trust (DOT) securing their consumer loan agreement did not contain a legal description for the six acres on which the residence was located. The Dormans moved back into the home, and Trustmark filed suit in the Leake County Circuit Court for the remaining loan deficiency. The Dormans counterclaimed that Trustmark had wrongfully foreclosed on their home, and Trustmark moved to amend its complaint to assert an affirmative defense of

mutual mistake, which the court granted. Trustmark subsequently filed a motion for summary judgment, alleging that the parties had intended for the Dormans' residence to be included in the DOT, and the bank requested a reformation of the deed for mutual mistake. Granting summary judgment, the circuit court ordered that the DOT be reformed to reflect the legal description for the residential property and awarded Trustmark a deficiency judgment.

¶2. The Dormans argue on appeal that the court did not have subject-matter jurisdiction to reform the DOT and erred in granting the motion for summary judgment, reforming the DOT, and awarding a judgment for the loan deficiency. Although we find the court had jurisdiction to consider the bank's claims, we conclude that there is a genuine issue of material fact as to whether the Dormans intended to pledge the residential property as security for the loan, and we reverse the court's judgment and remand for further proceedings. Accordingly, we find the court erred in reforming the DOT and in awarding a deficiency judgment against the Dormans.

## FACTS AND PROCEDURAL HISTORY

¶3. The Dormans owned several parcels of land in Leake County, Mississippi. In April 1999, they obtained a loan for $80,462 from Carthage Bank.[1] The loan was secured by a DOT for certain parcels of land, which included the Dormans' residence located on

---

[1] In 2005, Carthage Bank changed its name to Heritage Banking Group. In April 2011, the Mississippi Department of Banking and Consumer Finance closed Heritage, and Trustmark assumed all of the Heritage's loans and deposits.

approximately six acres at 723 Highway 487, Carthage, Mississippi. In March 2004, the Dormans consolidated the 1999 loan with other loans to lower their monthly payments. Although the bank's loan application listed the "residence" under "Collateral Offered or Purchased," the DOT securing the loan did not contain a legal description of the six acres on which the home was located.[2]

¶4. On April 14, 2005, the Dormans executed another consolidated loan agreement for $164,720.66 with Heritage Banking Group, Trustmark's predecessor in interest. The agreement stated that the loan was:

> Secured by Deed of Trust of even date herewith on real estate located in Section 31 Township 10 North Range 9 Leake County Mississippi *being more particularly described in said Deed of Trust*; One (1) 1997 Toyota 4 Runner[,] Serial No. JT3GM84R8V001619J; 11 Shares Bank of Walnut Grove Stock evidenced by Certificate No. 472 in the name of Renodda Dorman or Odell Dorman.

(Emphasis added). The DOT for the 2005 loan did not contain a legal description of the six acres on which the Dormans' house was located.

¶5. When the Dormans became delinquent on their loan payments, Trustmark's attorney, Mark Mayfield, sent a foreclosure letter on October 25, 2013, stating in part:

> If you are the former owner, child, or spouse of former owner: Your home sold at foreclosure and you no longer own the property. *The premises must be vacated no later* [*than*] Thursday, October 31, 2013.
>
> Please immediately move out and remove the house of all contents. Lock

---

[2] Other collateral included on the application were a thirty-acre tract, an eighty-acre tract, eleven shares of bank stock, and a 1997 Toyota 4-Runner.

> doors and windows. Send this office the keys and garage door openers. Let us know the date that you'll be out, and we will change the locks.
>
> If you fail to comply, the new owner has asked us to file an eviction lawsuit directing the Sheriff to forcibly remove you and your belongings. Expect a Deputy Sheriff to serve you with a summons to appear in court.

The Dormans vacated the property and moved to a rental home. After a nonjudicial foreclosure sale, Renodda's brother-in-law contacted Trustmark in February 2014 to inquire about buying the property. Bank personnel informed him at that time that the DOT's legal description did not include the dwelling and the six acres upon which it was located; so the Dormans moved back into the house.

¶6. On May 22, 2014, Trustmark filed a complaint with the circuit court for the remaining loan deficiency of $70,791.99, plus interest. There was no mention of the issue with the DOT. The Dormans filed an answer and counterclaim, alleging wrongful foreclosure because Trustmark knew or should have known there was no lien on their residence. Trustmark subsequently filed a motion to amend its complaint on May 24, 2015, asserting a defense of mutual mistake because the loan documentation indicated that "Trustmark believed it was obtaining the Dormans' house as collateral for the subject loan, and the Dormans believed they were assigning their home as collateral for the subject loan." The circuit court granted the motion to amend. The Dormans were deposed in September 2016; both asserted that they did not intend to pledge their residence as security for the 2005 loan.

¶7. Trustmark filed a motion for summary judgment, requesting reformation of the DOT due to mutual mistake by the parties, which the circuit court granted. The circuit court

determined that Trustmark was entitled to reformation of the DOT based on mutual mistake, finding: "Here, based on the documents signed and acknowledged by the Dormans and Trustmark's internal documentation[,] there can be no legitimate dispute that both the Dormans and Trustmark intended for the Dormans' residence property to be collateral for the consolidated loan." The court found that the Dormans' moving out of the house after foreclosure "demonstrated [their] belief that Trustmark had a valid security interest in their residence[.]" The court further held that Trustmark was "entitled to summary judgment on its affirmative claim for a deficiency judgment in the principal amount of $70,791.99 plus prejudgment interest from and after April 30, 2014, at the rate of 7.50% per annum, through August 24, 2017, in the amount of $19,987.93." The Dormans' counterclaims were dismissed with prejudice.

¶8. The Dormans assert on appeal that the circuit court erred in granting summary judgment, citing the following arguments: (1) there was a genuine issue of material fact whether the Dormans intended to pledge the house as security for the loan; (2) there was no mutual mistake to support the reformation of the deed; (3) the court did not have subject-matter jurisdiction to reform the DOT; and (4) the deficiency judgment was not ripe for adjudication.

**DISCUSSION**

I. **Whether the circuit court had subject-matter jurisdiction to reform the DOT.**

¶9. Before addressing the substantive issues raised on appeal, we first consider the

5

Dormans' claim that the circuit court lacked subject-matter jurisdiction. Trustmark's complaint requested recovery of a deficiency judgment on a loan, which the Dormans acknowledge was properly before the circuit court as a matter of law. However, the circuit court allowed Trustmark to amend its answer to the Dormans' counterclaim to assert reformation and mutual mistake as a defense. At the motions hearing, the circuit judge questioned whether he had the power to reform the deed, noting: "It's just I think that the place for that correction is in front of a chancellor." After briefing by the parties on the issue, the court determined in its final judgment that it had subject-matter jurisdiction over the claims. The Dormans now argue that Trustmark tried to "back door" the issue of reformation by filing the complaint for the deficiency judgment and that the bank "should have sought reformation in chancery court."

¶10. "To determine whether a court has subject[-]matter jurisdiction, we look *to the face of the complaint*, examining the nature of the controversy and the relief sought." *RAS Family Partners LP v. Onnam Biloxi LLC*, 968 So. 2d 926, 928 (¶11) (Miss. 2007) (emphasis added). "If the complaint seeks legal relief, even in combination with equitable relief, the circuit court can have proper subject[-]matter jurisdiction." *Id.* "[E]quitable claims are more appropriately brought before a circuit court when they are connected to a contractual relationship or other claims tied to questions of law." *Era Franchise Sys. Inc. v. Mathis*, 931 So. 2d 1278, 1283 (¶14) (Miss. 2006).

¶11. As the court noted, Trustmark's complaint asserted a legal claim for a deficiency

6

judgment; the issue of mutual mistake later arose as an affirmative defense to the counterclaim. The Mississippi Supreme Court has held that once a circuit court acquires subject-matter jurisdiction of an action at law, "it may hear and adjudicate in that action all claims, including those with an equitable smell, arising out of the same transaction and occurrence as the principal claim." *Hall v. Corbin*, 478 So. 2d 253, 255 (Miss. 1985). This includes "other claims (whether asserted by the one or more of the original parties or by new or intervening parties), ancillary or pendent to the original claim," even if those claims "standing alone may have been beyond the court's jurisdiction." *Id*. Because Trustmark's equitable claim was raised as a defense to the Dormans' counterclaim, we find no error in the circuit court's determination that it had subject-matter jurisdiction of Trustmark's claim for reformation of the DOT.

**II.     Whether the circuit court erred in granting Trustmark's motion for summary judgment.**

¶12.    Appealing the circuit court's decision to grant Trustmark's motion for summary judgment, the Dormans contend that their deposition testimony refuted Trustmark's claim that both parties intended for the residence to be pledged as security; therefore, a genuine issue of material fact existed precluding summary judgment.

¶13.    Summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). The evidence is viewed in the light most favorable to

7

the nonmovant. *Sweet v. TCI MS Inc.*, 47 So. 3d 89, 91 (¶9) (Miss. 2010). "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Haygood v. First Nat'l Bank of New Albany*, 517 So. 2d 553, 555 (Miss. 1987) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 254 (1986)). Thus, in petitioning for a reformation of the DOT through its summary-judgment motion, Trustmark had to prove "beyond a reasonable doubt" mutual mistake among the parties through clear and convincing evidence. *See Bert Allen Toyota Inc. v. Grasz*, 909 So. 2d 763, 769 (¶16) (Miss. Ct. App. 2005) (Evidence to support reformation of a contract based on mutual mistake "must be clear and convincing . . . [, and] the proof must establish mutual mistake beyond a reasonable doubt.").

¶14. Trustmark submitted internal loan documentation for the loan agreements executed by the Dormans from 1999 to 2005, most of which indicated that the residence was to be pledged as collateral.[3] The documents also showed that the Dormans paid $700 for an appraisal of the home in relation to the 2004 loan. The bank submitted an affidavit by Larry Waggoner, an employee of the bank for almost forty years, who averred that the Dormans had "offered" their residence as part of the collateral on their applications for the 2004 and 2005 loans and had listed the bank on their homeowners' insurance policy as a mortgagee. He further stated that in connection with the 2005 loan, the bank "completed a FEMA

---

[3] There is no dispute that the DOT for the first loan in 1999 contained a legal description for the property at issue.

Standard Floor Hazard Determination," which is only required "if there is a building on the land being offered as collateral." The circuit court reviewed Trustmark's evidence and concluded there was no "legitimate dispute" that the Dormans intended to pledge the home as security.

¶15. However, the court made no mention of the Dormans' depositions, in which the couple testified that they did not intend to pledge the residence and its property as security for the loan.

**Odell Dorman's Deposition**:

Q.     Mr. Dorman, do you understand that Trustmark believed it had a lien on the home?

. . . .

A.     No.

Q.     When Trustmark foreclosed on your house, if you didn't believe the bank had a lien on your house, why did you move out?

A.     All the foreclosures and the letters we was getting, that is the reason why I thought they – because they kept sending us letters telling us we had to get out, move out, and if we wasn't out, they was going to put us out.

Q.     Did you think that [Trustmark] had a lien on your home?

A.     No.

. . . .

Q.     If you didn't think [Trustmark] had a lien on your home, why did you move out?

9

A.      Just like I was telling you, they kept sending us letters and letters to move out. We didn't have a choice.

**Renodda Dorman's Deposition**:

Q.      Mrs. Dorman, did you understand that your house was part of the property that was being foreclosed upon?

A.      No.

Q.      Why not?

A.      Because we thought that it was the 29 acres of land. The house was not in that 29 acres of land.

Trustmark argues that the Dormans' testimony was conclusory and self-serving and, therefore, insufficient to defeat summary judgment. Trustmark is correct in that this Court may not rely simply "upon unsupported, conclusory allegations to defeat a motion for summary judgment where there are no issues of material fact." *Jacox v. Circus Circus Miss. Inc.*, 908 So. 2d 181, 184 (¶6) (Miss. Ct. App. 2005). We find instructive *Callicutt v. Professional Services of Potts Camp Inc.*, 974 So. 2d 216, 220 (¶16) (Miss. 2007), in which the supreme court considered a nonmovant's affidavit averring that he did not intend to sell the property at issue. Noting the affidavit contradicted his prior deposition testimony, "as well as the contract to sell the land," the supreme court concluded: "While the Court normally must resolve all factual inferences in favor of the nonmovant, 'the nonmovant cannot manufacture a disputed material fact where none exists.' Thus, the nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony." *Id*. (quoting *Foldes v. Hancock Bank*, 554 So.

10

2d 319, 321 (Miss. 1989)).

¶16.    These are not the facts before us.  The Dormans' testimony only contradicted the bank's circumstantial evidence as to the Dormans' intent to use the property as collateral. Waggoner's affidavit was not based on any personal knowledge of the Dormans' intent. Furthermore, the 2005 loan agreement stated that the loan was secured by the DOT, which did not contain a legal description of the residence.  Therefore, unlike *Callicutt*, the nonmovants' testimony regarding their intent does not contradict the "contract."

¶17.    "Intent is a question of fact[.]"  *Calvert v. Griggs*, 992 So. 2d 627, 633 (¶15) (Miss. 2008).  A court may not grant summary judgment based on credibility determinations or by weighing conflicting evidence.  *Garner v. Hickman*, 733 So. 2d 191, 194 (¶13) (Miss. 1999). *See also Watkins ex rel. Watkins v. Miss. Dep't of Human Servs.*, 132 So. 3d 1037, 1044-45 (¶22) (Miss. 2014) ("Giving credence to one sworn statement over another is not appropriate at the summary judgment level . . . even when the ultimate factfinder will be the judge in a bench trial.").  In concluding that there was no "legitimate dispute" that the Dormans intended to pledge the property as collateral, the circuit court made credibility determinations and improperly weighed the evidence.  Viewing the evidence in the light most favorable to the nonmovants, we find the Dormans' testimony—that they did not intend to pledge their home as collateral—was sufficient to create a genuine issue of material fact as to the parties' intent, making this issue more appropriate for trial.

¶18.    As already stated, a petitioner requesting reformation of a contract based on mutual

11

mistake must present clear and convincing evidence beyond a reasonable doubt. *Bert Allen Toyota Inc.*, 909 So. 2d at 769 (¶16). Although Trustmark submitted bank documents to support its claim that the Dormans intended to pledge their residence as collateral for the loan, it is undisputed that the DOT securing the 2005 loan did not contain a legal description of the property in question; nor did the legal description in the Trustee's Notice of Sale for publication. The Dormans unequivocally testified that they did not intend to pledge their residence as security. We find that the circuit court erred in reforming the DOT as there is a genuine issue of material fact that a mutual mistake occurred.

¶19. Accordingly, the circuit court erred in granting summary judgment.

### III. Whether the circuit court erred in awarding a deficiency judgment.

¶20. Although moot based on our reversal of summary judgment, we address the more unusual aspects of the loan-deficiency judgment in favor of Trustmark. The Dormans argue that Trustmark's claim for a deficiency judgment "was not ripe" and that the court's reformation of the DOT resulted in the Dormans "not being given credit for the bid price for the home place . . . because it ha[d] never been verbally offered for sale." They contend: "When Mark Mayfield stood on the courthouse steps and read the foreclosure notice of sale, the legal description that he read out and offered for sale did not include the home place."

¶21. For the first time on appeal, Trustmark claims that the Dormans were given credit for the value of the residential property because the bank "calculated the post-foreclosure sale deficiency balance of $70,791.99 believing it had sold (and actually bought at the foreclosure

12

sale by credit bid) the House Property." In effect, the bank wants the court to reform not only the DOT but also the foreclosure sale. There is nothing in the record to substantiate Trustmark's claim; nor has it cited any authority for such revision. Our independent research has revealed some authority from other jurisdictions allowing for reformation after a foreclosure sale due to a scrivener's error or mutual mistake. These cases typically involve actions to quiet title by the third party purchaser. *See Glepco LLC v. Reinstra*, 307 P. 3d 744, 746, 752 (Wash. Ct. App. 2013) (finding the "trial court properly granted the trustee's sale buyers' requests for reformation and to quiet title in the disputed property," because the court found there was mutual mistake in the deed of trust's erroneous legal description); *Grappo v. Mauch*, 887 P.2d 740, 741 (Nev. 1995) (finding that "[a] third party is entitled to reformation of a deed of trust or mortgage when by mutual mistake the parties to the deed have omitted from the legal description a tract of land intended to be conveyed, and the third party subsequently purchases the land under a decree of foreclosure"); *Johnston v. Sorrels*, 729 S.W.2d 21, 23-24 (Ark. Ct. App. 1987) (finding that the purchasers at a foreclosure sale should have been allowed to reform erroneous property descriptions in the mortgages two years after the sale).

¶22. However, nonjudicial foreclosures in Mississippi are governed by the notice requirements in Mississippi Code Annotated section 89-1-55 (Rev. 2011), which provides that sales of land sold under deeds of trust are to "be advertised for three (3) consecutive weeks" preceding the sale, in a county newspaper or, "if none is so published, in some paper

13

having a general circulation therein," and by posting a notice at the county courthouse where the land is situated. The statute further provides that "[n]o sale of lands under a deed of trust or mortgage, shall be valid unless such sale shall have been advertised as herein provided for, regardless of any contract to the contrary." Miss. Code Ann. § 89-1-5. The published legal description for the notice of sale did not include the property in question. Therefore, there was no valid sale of that property. The supreme court has held in a case involving an error in a survey description discovered after a foreclosure sale: "It is necessary to a valid sale under foreclosure that prospective purchasers be informed by the notices as to the exact property being offered in order that bids may represent a fair price for the particular property involved." *Veterans Admin. v. Bullock*, 254 Miss. 562, 572, 180 So. 2d 610, 615 (Miss. 1965). Furthermore, without proper advertisement, the foreclosure sale may not have attracted those bidders interested in buying the residence.

¶23. Trustmark's claim also contradicts its prior arguments. In its motion for summary judgment, Trustmark asserted: "Under the terms of the note, *once Trustmark sells the residence property*, it will be entitled to a judgment for any deficiency between the sale price and what it is currently owed on the note." (Emphasis added). At trial, Trustmark's attorney argued that "there [was] no dispute as to how much money was received for the collateral *that was actually sold*." (Emphasis added). The circuit court's judgment acknowledged that Trustmark "shall have the right to re-foreclose upon the property if necessary."

¶24. The supreme court has held: "[A] creditor has no right to a deficiency judgment until

14

[it] satisfies the court that it would be equitable, in the light of the sale price, to authorize a deficiency judgment." *Hartman v. McInnis*, 996 So. 2d 704, 710 (¶21) (Miss. 2007). Here, the property has not yet been sold at foreclosure; therefore, there is no deficiency. Accordingly, we further find that the circuit court erred in awarding the deficiency judgment.

¶25. **REVERSED AND REMANDED.**

**CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**